1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QWEST CORPORATION, a Colorado
corporation,

                Plaintiff,

      v.

ANOVIAN, INC., et al.,

                Defendants.

CASE NO. C08-1715 RSM

ORDER GRANTING THE BROADVOX
DEFENDANTS' MOTION TO DISMISS
FOR LACK OF JURISDICTION

This matter is now before the Court for consideration of defendants Broadvox, Inc., Broadvox, LLC, and BroadvoxGo!, LLC 's motion to dismiss for lack of personal jurisdiction, or in the alternative, to stay proceedings under the doctrine of primary jurisdiction or to transfer the case to the U.S. District Court for the Western District of Texas. Dkt. #48. Defendants also move to dismiss the fraud claim for lack of particularity and for a more definite statement. The Court has considered the pleadings, the memoranda of the parties, and the declarations submitted. For the reasons set forth below, the Court does not reach the issues presented in the alternative motion because the Court finds that it does not have personal jurisdiction over the defendants.

FACTUAL BACKGROUND

This matter arises out of Qwest Corporation's allegations that defendants Anovian, Broadvox, Transcom, and UniPoint failed to pay legally required charges (access charges) for their use of Qwest's

ORDER GRANTING THE BROADVOX
DEFENDANTS' MOTION TO DISMISS FOR
LACK OF JURISDICTION - 1

services in completing long-distance telephone calls. Qwest alleges that the defendants are liable for these charges because they "act as" interexchange carriers within the meaning of 47 C.F.R. § 69.5(b), which assesses access charges "upon all interexchange carriers that use local exchange switching facilities" in providing interstate telecommunications services.

Defendants Broadvox, Inc., Broadvox, LLC, and BroadvoxGo!, LLC (collectively, the "Broadvox Defendants") are providers involved in the telecommunications industry that participate, through the use of new Internet technology, in the routing of telephone calls, some of which originate or terminate in Washington. Broadvox, LLC routes voice communications over the internet for other communications companies, BroadvoxGo!, LLC sells this service to other businesses, and Broadvox, Inc. is only a holding company. Broadvox, LLC and BroadvoxGo!, LLC are both Delaware limited liability companies, while Broadvox, Inc. is an Ohio corporation. Through 2007, all of the Broadvox Defendants had their principal places of business and headquarters in Cleveland, Ohio. However, since that time, they have been headquartered in Dallas, Texas.

The Broadvox Defendants have never had any employees or offices in Washington, nor have they ever been licensed to do business in Washington. They have never directed any marketing into Washington, nor owned or used any real estate in Washington, nor sent any representatives to the state to negotiate contracts. Moreover, only 0.1051% of the Broadvox Defendants' 2008 purchasing was from Washington businesses, and their 2008 sales to Washington comprised only 0.4189% of their total sales. The Broadvox Defendants' total numbers throughout their existence are not much different: only 0.4154% of their purchasing and only 0.3065% of their sales have involved Washington businesses and customers. Of the nearly 800 vendors and over 7,000 customers with whom the Broadvox Defendants

ORDER GRANTING THE BROADVOX
DEFENDANTS' MOTION TO DISMISS FOR
LACK OF JURISDICTION - 2

have done business, only eight of those vendors and seven of those customers are located in

Washington.

Qwest provides local and long-distance telephone service to customers in many states, including

Washington. Generally speaking, long-distance carriers, or interexchange carriers, rely on companies

like Qwest to originate or terminate long-distance calls at the consumer level. Such interexchange

carriers are charged access charges for the use of Qwest's services in traditional wireline long-distance

service. However, the emergence of a new Internet technology—"IP telephony"—has allowed the

Broadvox Defendants and similar companies to provide communications services over the Internet, not

using traditional wireline technology. The defendants do not deal directly with Qwest and instead route

calls to another provider, which then routes the calls to Qwest for termination.

## ANALYSIS

Personal jurisdiction may be grounded in either general jurisdiction, when a defendant is either

domiciled in or conducts "substantial" or "continuous and systematic" activities in the forum state, or

specific jurisdiction, derived from a defendant's individual acts with respect to the allegations of a

complaint. *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (*citing Helicopteros*

*Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Qwest's theory of jurisdiction in

this matter is one of specific not general jurisdiction. "Washington's long-arm statute establishes

personal jurisdiction over a foreign party to the full extent permitted by due process." *Corbis Corp. v.*

*Integrity Wealth Management, Inc.* Slip Copy, 2009 WL 2486163 (W.D. Wash.) (*citing Byron Nelson*

*Co. v. Orchard Management Corp.*, 95 Wash. App. 462, 465 (1999)). The statute provides for specific

personal jurisdiction over non-resident defendants for matters arising out of, among other things, the

ORDER GRANTING THE BROADVOX
DEFENDANTS' MOTION TO DISMISS FOR
LACK OF JURISDICTION - 3

transaction of business within the state, the commission of a tortious act within the state, or the

ownership, use, or possession of any property within the state. Wash. Rev. Code § 4.28.185(a)–(c). The

Due Process Clause restricts findings of personal jurisdiction to those cases in which nonresident

"defendants have 'minimum contacts' with the forum state so that the exercise of jurisdiction 'does not

offend traditional notions of fair play and substantial justice.'" *Roth v. Garcia Marquez*, 942 F.2d 617,

620 (9th Cir. 1991) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To analyze whether the "minimum contacts" requirement is met, the Ninth Circuit has

established a three-part test: "(1) the nonresident defendant must have *purposefully availed* himself of

the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's

claim must *arise out of* or result from the defendant's forum-related activities; and (3) exercise of

jurisdiction must be *reasonable*." *Id.* at 620–21.

To meet the purposeful availment requirement under the first prong of the test, "the defendant

must have performed some type of affirmative conduct which allows or promotes the transaction of

business within the forum state." *Id.* at 621 (*citing Sinatra v. National Enquirer*, 854 F.2d 1191, 1195

(9th Cir. 1988)). Courts distinguish between contract and tort actions in analyzing this requirement.

While for suits concerning contracts, courts typically use a purposeful availment analysis, for suits

grounded in tort, courts most often use a purposeful direction analysis. *Schwarzenegger v. Fred Martin*

*Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2002). As this is a tort action, the Court will employ a

purposeful direction analysis.

A showing of purposeful direction "usually consists of evidence of the defendant's actions

outside the forum state that are directed at the forum, such as the distribution in the forum state of goods

originating elsewhere." *Id.* at 803. A defendant need not have physical contacts with the forum state.

ORDER GRANTING THE BROADVOX
DEFENDANTS' MOTION TO DISMISS FOR
LACK OF JURISDICTION - 4

*Id.* Courts use a three-part "effects" test in determining whether a plaintiff has satisfied the purposeful direction element of personal jurisdiction. The "effects" test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (explaining the test set out in *Calder v. Jones*, 465 U.S. 783 (1984)).

The plaintiff has the burden of proving the first two prongs of the Ninth Circuit's test. However, showing that the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice falls on the defendant's shoulders: "[w]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Panavision*, 141 F.3d at 1322 (*citing Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993)). If a court decides that a defendant's activities satisfy the first two prongs of the Ninth Circuit's test, it will then consider seven factors to determine the reasonableness of exercising personal jurisdiction over that defendant:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* at 1323 (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)). In weighing these factors, the courts find no single factor dispositive. *Id.*

Qwest has not carried its burden in satisfying the Ninth Circuit's test for personal jurisdiction. The Broadvox Defendants have had very little contact with the forum state. In fact, Qwest cannot show

that the Broadvox Defendants purposefully directed activities into Washington; the defendants have sent

no employees here, have directed no marketing at potential customers in Washington, and have no

facilities or operations here. While the Broadvox Defendants did at one time have a contract with a

third party, Electric Lightwave, Inc., to terminate some of its traffic in Washington, the Broadvox

Defendants terminated that contract in November 2006. The Broadvox Defendants do not themselves

terminate traffic in Washington: if an end user "directs traffic to be terminated in Washington state,

Broadvox transports the traffic and hands it off to a third party carrier for termination to the call

recipient." Dkt. # 57 at ¶ 4. Now that the Broadvox Defendants no longer have a contract with Electric

Lightwave, Inc., the handoff to such a third party occurs outside of Washington, and it is then up to the

sole discretion of the third party to determine how to terminate the call—whether to use Qwest's

services or not. It is not, then, the Broadvox Defendants' purposeful direction that leads to Qwest's

involvement with terminating traffic in Washington, but instead, that of the third parties. Moreover, the

fact that less than half of a percent of the Broadvox Defendants' businesses involve Washington

residents lends support to the notion that the Broadvox Defendants have not purposefully directed their

activities here. Even if they were intentional acts, they were not of the kind that were expressly aimed at

the forum state in such a way as the defendants would expect the resultant harm.

Moreover, Qwest has not shown that it was these tenuous contacts with Washington from which

its claim arose. It was not the Broadvox Defendants' contact with eight vendors and seven customers

that caused the matter at issue here. Instead, it was the traffic that the Broadvox Defendants handed off

originally to Electric Lightwave, Inc. and later to non-Washington-based third parties, that is at issue in

this case. As it is the third party's decision to route traffic to Qwest, it would be unreasonable to link the

traffic to the Broadvox Defendants in a way that would compel them to defend in Washington courts.

ORDER GRANTING THE BROADVOX
DEFENDANTS' MOTION TO DISMISS FOR
LACK OF JURISDICTION - 6

1
2
3
4
5
6
7
8
9
10

Even if Qwest had carried its burden with respect to the first two prongs of the test, it would be unreasonable to find personal jurisdiction over the Broadvox Defendants. First, another, more suitable forum exists in which to bring this suit: Texas. Judicial efficiency would be maximized by bringing the suit in a location that would reduce the burden on all defendants. And, particularly in an industry such as telecommunications, where traffic is routed to many different companies as it passes from callers to recipients around the world, it would offend traditional notions of fair play and substantial justice to hale into court defendants whose purposeful interjection into the forum state consists of such meager contacts as those of the Broadvox Defendants.

Plaintiff has requested a period of jurisdictional discovery. However, there is no need for discovery in this matter, as the facts related to personal jurisdiction have been sufficiently established.

CONCLUSION

The Court has found neither that the Broadvox Defendants purposefully directed their activities at Washington, nor a cause of action arising out of Broadvox's activities in Washington, nor that exercise of jurisdiction over the Broadvox Defendants would be reasonable. Therefore, the Court concludes that it does not have personal jurisdiction over the Broadvox Defendants. Accordingly, defendants' Rule 12(b)(2) motion to dismiss (Dkt. #48) is GRANTED, and this action is DISMISSED for lack of jurisdiction. The Clerk shall enter judgment accordingly.

DATED this 16th day of December, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING THE BROADVOX
DEFENDANTS' MOTION TO DISMISS FOR
LACK OF JURISDICTION - 7