Honorable Richard S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QWEST CORPORATION,

    Plaintiff,

v.

ANOVIAN, INC., et al.,,

    Defendants.

No. C08-1715SM

**MOTION OF BROADVOX DEFENDANTS TO DISQUALIFY WILKINSON, BARKER, KNAUER, LLP; TO STRIKE OPPOSITION BRIEF FILED BY WILKINSON IN VIOLATION OF CONFLICT OF INTEREST RULES; AND FOR OTHER APPROPRIATE RELIEF**

NOTE ON MOTION CALENDAR:
March 12, 2010

## I.   INTRODUCTION

By continuing to represent Qwest against the Broadvox defendants (collectively "Broadvox") after joining their new law firm, Qwest Attorneys Phillip Roselli and Mark Walker have violated their ethical obligations by creating a conflict of interest. They are now suing existing clients of their new firm, Wilkinson Barker & Knauer LLP ("Wilkinson"), which admitted to terminating its relationship with Broadvox only after, and only because, Broadvox refused to waive Wilkinson's conflict in representing Qwest. Messrs. Roselli and Walker have therefore violated, and continue to violate, their duties to current clients of their law firm.

Even if Wilkinson's termination of Broadvox's engagement was somehow proper, its

Motion of Broadvox Defendants to Disqualify, etc. - 1
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

prior representation of Broadvox was substantially related to the Qwest litigation, and therefore requires a waiver of the conflict as it relates to former clients. The prior representation involved regulatory compliance matters in which Broadvox's status as a carrier or non-carrier – the central issue in this case – was directly at issue, and in which directly relevant confidential information was disclosed to Wilkinson. Even if Broadvox is treated as a former client, therefore, an actual conflict exists and Broadvox has declined to waive the conflict.

Despite Wilkinson's admission as to the existence of a conflict and the requirement of a waiver, Messrs. Roselli and Walker allowed two full weeks to pass without substituting new counsel for Qwest, or even seeking an extension to do so. Instead, Wilkinson's newly-hired attorneys have acted adversely to Broadvox on its Motion for Attorneys' Fees. To make matters worse, Wilkinson has admitted to forwarding a privileged e-mail from Broadvox's counsel to Mr. Roselli, and a new attorney engaged by Qwest to have discussions with Broadvox's counsel also shared separate information with Mr. Roselli, despite Broadvox's counsel's insistence that her discussions would occur on the condition that they not be shared.

Because of the flagrant and obvious violations of the Washington Rules of Professional Responsibility ("RPC"), the Broadvox Defendants request that the Court disqualify Wilkinson from representing Qwest against them, that the Opposition Brief filed in violation of the RPC be stricken, that the pro hac vice admission of Messrs. Roselli and Walker (which requires compliance with the RPC) be revoked, and that the Court grant such other relief as it deems appropriate.

Motion of Broadvox Defendants to Disqualify, etc. - 2
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## II. STATEMENT OF FACTS

Plaintiff Qwest Corporation sued Broadvox, Inc., Broadvox, LLC, and BroadvoxGo!, LLC on November 26, 2008 to obtain access charges based on novel theories relating to the Defendants' allegedly "acting like" interexchange carriers (IXCs). On December 15 and 16, 2009, this Court dismissed all of the Defendants remaining in the case at that time.[1] (Dkt. Nos. 66 – 68).[2] On February 3, 2010, Broadvox and the Transcom Defendants filed separate Motions for Attorneys' Fees and Costs.

On that date, Alex Gertsburg (Broadvox's General Counsel), received a phone call from Attorney Larry Movshin of the law firm of Wilkinson Barker Knauer, LLP ("Wilkinson") asking Broadvox to waive a conflict of interest that Wilkinson has in hiring Attorneys Roselli and Walker and having them continue to represent Qwest in litigation against Broadvox. *See* Declaration of Alex Gertsburg (hereafter Gertsburg Dec.), attached hereto at Exhibit A, at ¶2. Mr. Gertsburg agreed that Wilkinson had a conflict but declined to waive it, whereupon Mr. Movshin informed Mr. Gertsburg that Wilkinson was terminating its representation of Broadvox. Gertsburg Dec. at ¶3.

By way of background, six months earlier, in July 2009, Broadvox, Inc. had retained Wilkinson to assist Broadvox in complying with the regulations of the Federal Communications Commission (FCC) relating to local number portability, 911 service and the Communications Assistance for Law Enforcement Act (CALEA). Gertsburg Dec. at ¶4. Between July and November of 2009, various Wilkinson attorneys had numerous technical

---

[1] Broadvox and Defendants Transcom Holdings, Inc. and Transcom Enhanced Services, Inc. ("the Transcom Defendants") were dismissed for lack of personal jurisdiction. Defendants Unipoint Holdings, Inc., Unipoint Enhanced Services, Inc. and Unipoint Services, Inc. ("the Unipoint Defendants") were dismissed for Qwest's failure to state a claim.
[2] Even though the Broadvox Defendants were dismissed for lack of personal jurisdiction, on January 14, 2010, Qwest, through Mr. Roselli, took the extraordinary step of filing a First

Motion of Broadvox Defendants to Disqualify, etc. - 3
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

discussions with Broadvox personnel concerning Broadvox's network, technology, call transmission, traffic type and operations, and received confidential written communications and other confidential documentation from Broadvox about those areas. Gertsburg Dec. at ¶5. The last substantive communication from Wilkinson concerning its compliance work was sent to Broadvox on November 6, 2009. A privilege-redacted copy of that communication is attached hereto at Exhibit A-1. It leaves no indication that Wilkinson foresaw the termination of the relationship, or even the conclusion of that work. In that e-mail, Wilkinson Attorney Chuck Keller acknowledges that additional information is needed, and suggests that additional analysis by Wilkinson can occur once it receives that information concerning other companies within the Broadvox family. *See* 11/6/09 Keller e-mail to Attorney Gertsburg, Ex. A-1. Mr. Gertsburg began reviewing Wilkinson's work product but did not, and has not, completed that review. Gertsburg Dec. at ¶7. The attorney-client relationship continued for both Wilkinson and Broadvox – until two weeks ago, on February 3, 2010.

On that day, Wilkinson's Larry Movshin informed Mr. Gertsburg that Wilkinson had hired Attorneys Roselli and Walker, counsel of record for Qwest in this litigation. Gertsburg Dec. at ¶3. Mr. Movshin asked Mr. Gertsburg to waive Wilkinson's admitted conflict of interest. *Id.* Mr. Gertsburg declined, and Mr. Movshin then immediately informed Mr. Gertsburg that Wilkinson was terminating its attorney-client relationship with Broadvox. *Id.* In the e-mail exchange that ensued over the next three days, Mr. Movshin confirmed that the attorney-client relationship was terminated only because there was an "absence of a [reasonable] waiver". Wilkinson's position was that it could represent Qwest because Broadvox was not "acting reasonably and diligently in considering" Wilkinson's request for a

---

Amended Complaint, naming multiple defendants, including the Broadvox Defendants.

Motion of Broadvox Defendants to Disqualify, etc. - 4
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

waiver, as required by Broadvox's engagement letter. *See* 2/4/10 e-mail from Attorney Movshin to Attorney Gertsburg, attached hereto at Exhibit A-2.

Wilkinson also did not feel constrained with respect to its disclosure of these communications because it sent one to Messrs. Roselli and Walker without Broadvox's consent. On Friday, February 5, 2010, Mr. Gertsburg asked Mr. Movshin to confirm that none of the communications between Mr. Movshin and Mr. Gertsburg had been shared with Messrs. Roselli and Walker. *See* 2/5/10 Gertsburg e-mail to Movshin, attached hereto at Exhibit A-3. Mr. Movshin nebulously responded in the future tense only, saying that Wilkinson "will comply fully with our obligations to you as a former client of the firm…". *See* 2/5/10 Movshin e-mail to Gertsburg, attached hereto at Exhibit A-3. It was not until a phone conference on Monday, after several insistent e-mails from Mr. Gertsburg, that Mr. Movshin admitted he had forwarded to Messrs. Roselli and Walker a privileged e-mail from Mr. Gertsburg to Mr. Movshin concerning the conflict and other matters not related to the conflict. *See* 2/8/10 Gertsburg e-mail to Movshin, attached hereto at Exhibit A-4. He also suggested to Mr. Gertsburg that Messrs. Roselli and Walkerwould be walled off from Broadvox's files with Wilkinson. *See id*.

Qwest then had Mr. Colin Cox, a Texas attorney completely unrelated to this case, contact Broadvox's counsel to discuss a potential resolution of the pending Motion for Attorneys' Fees. Mr. Cox has never had anything to do with this litigation, and was clearly brought in by Qwest in recognition of the shaky ethical ground on which Messrs. Roselli and Walker stood.[3]

---

[3] Mr. Cox, meanwhile, was told by Anita Taff-Rice, counsel for Broadvox, that she would only discuss the case with Mr. Cox if he did not share any of those discussions with Mr. Roselli as a result of Mr. Roselli's conflict. Despite knowing Ms. Taff-Rice's position, Mr. Cox

Motion of Broadvox Defendants to Disqualify, etc. - 5
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Wilkinson admitted it had a conflict, requested a waiver of that conflict and then had that request denied. Two full weeks later, on February 16, 2010, having had plenty of time to either get an extension or substitute Mr. Cox (or anyone else) in for Messrs. Roselli and Walker, Wilkinson nonetheless filed a brief adverse to Broadvox in this case. That brief – Qwest's Response to Broadvox's Motion for Attorney's Fees (Dkt. No. 88), should be stricken and Wilkinson disqualified. Because of the egregious nature of their violation of the Washington Rules of Professional Conduct, the pro hac vice admission which required the admitted attorneys to abide by those Rules, should be revoked. Broadvox also requests any other relief the Court deems appropriate under these circumstances.

### III.   ARGUMENT

A.   Qwest's Attorneys Should Be Disqualified Because They Have Violated, And Continue To Violate, Their Conflict of Interest Obligations To Current Clients

(1) Wilkinson Admitted It Had A Conflict With A Current Client

Whenever a conflict is alleged, the burden of demonstrating that a conflict does not exist rests "on the firm whose disqualification is sought." *Avocent Redmond corp. v. Rose Electronics*, 491 F.Supp.2d 1000, 1008 (W.D. Wash., 2007) (placing burden on allegedly disqualified firm even where opposing party brought motion). Wilkinson cannot meet its burden because it already admitted that Broadvox was a current client, that a conflict existed, and that Broadvox declined to waive it. Under the Washington Rules of Professional Responsibility ("RPC"), the analysis stops there and Wilkinson must be disqualified.

RPC 1.7 states that, absent a written waiver (among other requirements), "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A

---

nonetheless continued having discussions with her while sharing those discussions with Mr. Roselli.

Motion of Broadvox Defendants to Disqualify, etc. - 6
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client …" *See also* RPC 1.7, Cmt. 4. When a conflict arises after representation has commenced, the attorney ordinarily must withdraw from the representation, unless he or she has obtained the informed consent of the client. *See* RPC 1.7, Cmt. 6 ("Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.")

By telephone on February 3 and then by e-mail the next day, Attorney Movshin confirmed that Broadvox was a current Wilkinson client, that a conflict existed, and that Broadvox was not waiving it. In his own words,

> we chose to ask for a waiver of the potential conflict that could be created when several attorneys from Kamlet Reichert, currently representing our long-time client Qwest in the Washington litigation adverse to Broadvox, joined Wilkinson Barker, if Qwest chose to retain them to continue that litigation. And as a current client, represented separately in the matter, you clearly had a right to determine whether or not to waive that conflict …

Movshin e-mail dated 2/4/10, Ex. A-2.[4]

Absent a waiver by the client, a conflict as to a particular attorney in a firm with respect to any current or former client is imputed to all lawyers in that firm. RPC 1.10(a). Under the clear, unequivocal prohibitions in Rule 1.7, when Broadvox refused to waive the conflict, neither Wilkinson nor its newly hired attorneys could continue to represent Qwest against Broadvox.

---

[4] Mr. Movshin incorrectly called it a "potential" conflict: Wilkinson had two clients suing each other. There is nothing potential about that conflict.

Motion of Broadvox Defendants to Disqualify, etc. - 7
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**(2) Wilkinson Cannot Avoid The Conflict By Terminating Its Relationship With Broadvox, And Its Doing So Independently Violated Its Duty Of Loyalty**

Attorney Movshin took position that although "a client always retains the unfettered right to deny a request for a conflict waiver [,]… in the absence of … a waiver [that we consider to be reasonable per our engagement letter], we have chosen to terminate our attorney-client relationship with the company." *Id.* This position is completely insupportable.[5]

It is well-recognized that attorneys cannot avoid conflicts with current clients by attempting to turn them into former clients solely to represent someone else. *See* Restatement 3d. of the Law Governing Lawyers, § 132, Cmt. C ("If a lawyer is approached by a prospective client seeking representation in a matter adverse to an existing client, the present-client conflict may not be transformed into a former-client conflict by the lawyer's withdrawal from the representation of the existing client. A premature withdrawal violates the lawyer's obligation of loyalty to the existing client…"); *Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1345 n.4 (9th Cir.1981)*; Picker Int'l, Inc. v. Varian Assocs., Inc.*, 670 F.Supp. 1363, 1365 (N.D.Ohio 1987) ("A firm may not drop a client like a hot potato, especially if it is in order to keep happy a far more lucrative client."); *Harte Biltmore Ltd. v. First Pennsylvania Bank*, 655 F.Supp. 419 (S.D.Fla. 1987) (current-client conflict caused by merger of two law firms could not be converted to former-client conflict by withdrawing from representing disfavored client). *See also Estates Theatres, Inc. v. Columbia Pictures Indus.*, 345 F.Supp. 93, 100 (S.D.N.Y. 1972). Courts also allow relatively long periods of inactivity and find nonetheless that a client remains a current client, subjecting the lawyer to the stricter concurrent-representation rules of conflict. *See Shearing v. Allergan, Inc.,* 1994 WL 396139 (D.Nev.1994) (law firm that had served client

---

[5] Even if Wilkinson had the ability to disregard a client's refusal to waive a conflict based on the client's unreasonableness, no one can legitimately argue that Broadvox's refusal to waive

Motion of Broadvox Defendants to Disqualify, etc. - 8
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

for 13 years and had not formally ended relationship was concurrently representing client, despite fact that client had not engaged firm for more than 1 year).

Wilkinson's termination of its relationship with Broadvox thus not only failed to remove the conflict, it constituted a separate breach of Wilkinson's duty of loyalty to Broadvox. *See* Restatement 3d. of the Law Governing Lawyers, § 132, Cmt. C. Broadvox's attorney spelled out the conflict for Wilkinson but it refused to listen. It then accepted the representation, filed a brief adverse to Broadvox and shared privileged communications with Attorney Roselli. *See* 2/8/10 Gertsburg e-mail to Movshin, Ex. A-4 ("Confirming, you stated that you forwarded to Mr. Roselli and his co-counsel the first e-mail I sent [you] concerning [privileged information omitted]….").

Wilkinson should be disqualified from representing Qwest against Broadvox. Its brief opposing Broadvox's Motion for Attorneys' Fees should be stricken as an independent violation of that duty, and Qwest's attorneys' *pro hac vice* admission revoked. *See* General Rule ("GR") 2(e) of the Local Rules for the U.S. District Court for the Western District of Washington ("[A]ttorneys appearing in this District shall be familiar with and comply with the…Washington Rules of Professional Conduct"); GR 2(f)(1) and (3) (making *pro hac* attorneys subject to the "disciplinary jurisdiction of this court" for RPC violations; GR 2(F)(4) (permitting, among other disciplinary actions, the court's suspension of an attorney from practicing before the Court for a "specific period" or under "specific conditions").

B. <u>Even Assuming Wilkinson's Termination of Broadvox's Engagement Was Somehow Proper, Qwest's Attorneys Have Violated, And Continue to Violate, Their Conflict of Interest Obligations To Former Clients</u>

RPC 1.9 provides:

---

*this* conflict was unreasonable.

Motion of Broadvox Defendants to Disqualify, etc. - 9
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> * * *
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>   (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
>   (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Even if Wilkinson could avoid the conflict rules applicable to current clients by turning Broadvox into a former client, its conduct still violated both Subsections (a) and (c) of RPC 1.9. It was unable under that Rule to undertake the representation of Qwest for those reasons as well.

> (1) <u>Wilkinson's representation of Broadvox on telecom regulatory compliance matters is substantially related to Qwest's lawsuit against Broadvox for violation of telecom regulatory rules.</u>

"Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." RPC 1.9, Cmt. 3. As to the latter, Broadvox is not required to reveal the confidential information … in order to establish the aforesaid risk. *Id.; Teja v. Saran*, 68 Wn. App. 793, 846 P.2d 1375 (1993). "A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." RPC 1.9, Cmt. 3.

Motion of Broadvox Defendants to Disqualify, etc. - 10
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

In order to advise Broadvox on its compliance with the FCC's CALEA, 911 and LNP rules, Wilkinson obtained highly sensitive, technical and privileged information about Broadvox's network architecture, technology, traffic patterns and operations.  Gertsburg Dec. at ¶ 5.  Broadvox does not need to disclose the specifics.  RPC 1.9, Cmt. 3.  This information is directly at issue in this litigation.  *See* Compl. [Dkt. 1] at ¶22 ("It is *how* Defendants cause these long-distance calls to be terminated that allows them to perpetrate their scheme."  Emph. added.).  The matters are substantially related under RPC 1.9 for this reason alone.  *See Avocent Redmond Corp. v. Rose Elecs*, 491 F. Supp. 2d 1000 (W.D. Wash. 2007)(disqualifying law firm representing defendant in a patent infringement action where the firm represented plaintiff in post-acquisition intellectual property licensing matters).

Separately, Broadvox's status as a carrier or a non-carrier also dictates which FCC rules apply, and whether state rules apply (if Broadvox were a carrier).  *See, e.g.,* 47 C.F.R. § 9.5 (E911 Service) ("The following requirements are only applicable to providers of interconnected VoIP services [as opposed to carriers].")  Broadvox's status as a non-carrier, meanwhile, is at the very center of Qwest's entire case, which argues that Broadvox owes access charges because it "acts like" an interexchange carrier ("IXC").  *See, e.g.,* Qwest Consolidated Opposition Brief to Defendants' Motions to Dismiss (Dkt. 55) at §VI(2) (Section entitled "Defendants Act As IXCs For Purposes Of The Long-Distance Traffic At Issue In This Lawsuit").

Broadvox retained Wilkinson to consult on telecom regulatory matters.  Wilkinson is now representing Qwest in the present telecom regulatory litigation against Broadvox.  The matters are substantially related under RPC 1.19, and Wilkinson's representation of Qwest therefore violates that Rule.

Motion of Broadvox Defendants to Disqualify, etc.  - 11
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(2) <u>Wilkinson Violated Its Duty To Broadvox By Forwarding Privileged E-Mail Communications To Qwest's Counsel</u>

RPC 1.9(c) prevented Wilkinson from "reveal[ing] information relating to the representation except as these Rules would permit or require with respect to a client." *See also* RPC 1.6 (Confidentiality of Information).  On February 4, Wilkinson Attorney Movshin forwarded to Qwest Attorney Roselli an e-mail from Broadvox Attorney Gertsburg to Mr. Movshin.  *See* 2/8/10 Gertsburg e-mail to Movshin, Ex. A-4 (confirming Movshin's admission to the disclosure).  The forwarded e-mail describes Broadvox's position on Wilkinson's conflict of interest and also discloses privileged, confidential information.  *See id*.  At most, Wilkinson should have simply informed Mr. Roselli that Broadvox declined to waive the conflict.  Anything more was an unauthorized disclosure that violated Wilkinson's duty under RPC 1.9(c) to a former client, if indeed Broadvox was one, as well as RPC 1.6 (Confidentiality of Information).  Wilkinson should be disqualified for this reason alone.

### IV.    CONCLUSION

Qwest's attorneys are conflicted out of this case.  Its new law firm fired Broadvox as a client in order to represent Qwest against Broadvox.  That conduct by itself violated Wilkinson's duties to Broadvox but Wilkinson did not stop there.  It then breached various duties of confidentiality, and it unceremoniously proceeded to make an adverse filing against Broadvox.  The Court should disqualify Wilkinson from this case, strike the offending brief, and revoke Qwest's out of state attorneys' *pro hac vice* admission.  Broadvox also respectfully requests an award of its attorneys' fees in bringing this motion as a further sanction for Wilkinson's violation of the Rules of Professional Conduct.

Motion of Broadvox Defendants to Disqualify, etc. - 12
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Respectfully submitted this 19th day of February, 2010.

| | |
|---|---|
| By /s/ David Binney<br>    David H. Binney, WSBA # 07576<br>    Jessica A. Skelton, WSBA #36748<br>K&L GATES LLP<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104-1158<br>Telephone: (206) 623-7580<br>Fax: (206) 623-7022<br>E-Mail: david.binney@klgates.com<br><br>Attorneys for Defendants Broadvox, Inc.;<br>Broadvox, LLC; and BroadvoxGo!, LLC | Alexander E. Gertsburg, Esq., *Pro Hac Vice*<br>Broadvox, Inc.<br>1228 Euclid Avenue, Suite 390<br>Cleveland, OH 44115<br>Telephone: 216.373.4811<br>Fax: 216.373.4812<br>Email: agertsburg@broadvox.net<br><br>Anita Taff-Rice, *Pro Hac Vice*<br>Law Offices of Anita Taff-Rice<br>1547 Palos Verdes, #298<br>Walnut Creek, CA 94597<br>Phone: 415.699.7885<br>Email: anitataffrice@earthlink.net |

Motion of Broadvox Defendants to Disqualify, etc. - 13
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2010, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

By: /s/ Judy Goldfarb
Judy Goldfarb, Legal Assistant

Motion of Broadvox Defendants to Disqualify, etc. - 14
Case No. C08-1715 RSM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022