Honorable Ricardo Martinez

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| QWEST CORPORATION, | Case No. 2:08-cv-01715-RSM |
|---|---|
| Plaintiff, | **QWEST'S RESPONSE TO BROADVOX'S MOTION TO DISQUALIFY** |
| v. | |
| ANOVIAN, INC., et al. | NOTE ON MOTION CALENDAR: MARCH 12, 2010 |
| Defendants. | |

1. Broadvox's Motion to Disqualify is unfounded. In conjunction with their move to a new law firm, Wilkinson Barker Knauer, LLP ("Wilkinson" or "the Wilkinson firm") attorneys Philip Roselli and Mark Walker have comported at all times with Washington state's ethical rules. The lawyers at Wilkinson who had previously worked on a single, small, non-litigation engagement for Broadvox in 2009—the only work that the Wilkinson firm has ever done for Broadvox—have equally handled this situation consistent with their obligations under the ethical rules.[1]

2. At bottom, Broadvox's disqualification motion is an opportunistic attempt to deprive Qwest of its lead counsel. Broadvox does not demonstrate any prejudice from Roselli and Walker joining Wilkinson and continuing to represent Qwest. The dispositive facts are these:

---

[1] This Response focuses on the real issues—the conflict analysis— rather than attempting in 12 pages to respond to every inaccuracy in Broadvox's Motion to Disqualify (Dkt. No. 93) [hereinafter *Motion*].

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 1 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1  (a)  Neither Roselli nor Walker has received, or will have access to, any information pertaining to Wilkinson's prior work for Broadvox. They know only that this prior work related to Broadvox's "compliance with the FCC's CALEA, 911 and LNP rules," as disclosed in Broadvox's own motion. *Motion*, p. 11.

(b)  This will remain the case, as Wilkinson has taken strict measures to screen Roselli and Walker from any information relating to Wilkinson's prior work for Broadvox.

(c)  Further, none of the legal issues for which Wilkinson undertook the prior compliance analysis for Broadvox is related to the issues in this litigation.

## FACTS/CHRONOLOGY

3.  For more than 17 years, and long before the filing of this lawsuit, Qwest has been a client of the Wilkinson Firm for numerous matters unrelated to the matters at issue in this proceeding. Declaration of Lawrence Movshin (Exhibit A, hereinafter "*Movshin Dec.*"), ¶ 7.

4.  On Nov. 26, 2008, Qwest filed its Complaint in this action. Qwest's lead attorneys, Philip Roselli and Mark Walker, were at that time with Kamlet Reichert, LLP. Wilkinson was in no way involved.

5.  On July 9, 2009, Broadvox first engaged the Wilkinson Firm, specifically to "advise Broadvox on its compliance with the FCC's CALEA, 911 and LNP rules." *Motion*, p.11. The primary Wilkinson attorneys involved with this work were Charles Keller and Robert Morse.[2] Their declarations make clear that this work did not relate to the issues raised in this lawsuit.

6.  Wilkinson completed its work on this discrete assignment on or about Nov. 6, 2009, the date of the last communication from attorney Keller to Alex Gerstburg, Broadvox's General

---

[2] The Declaration of Charles Keller (hereinafter "*Keller Dec.*") is attached as Exhibit B; the Declaration of Robert Morse (hereinafter "*Morse Dec.*") is attached as Exhibit C.

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 2 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

Counsel. *Keller Dec.*, ¶ 5. Mr. Gertsburg never responded to that final email from Mr. Keller and never indicated that there was any outstanding work to be done on the engagement. *Id.* The first time that Mr. Gertsburg indicated to Wilkinson that he had yet to review this work product was in his communications with another Wilkinson attorney, Larry Movshin, *after* this conflict issue arose. *See Movshin Dec.*, ¶ 10.

7. Mr. Movshin is Wilkinson's Ethics Partner. Mr. Movshin first contacted Broadvox regarding the potential conflict caused by bringing this case to Wilkinson on February 2, 2010. *Movshin Dec.*, ¶ 9. In the hope that the Firm could retain the relationship with Broadvox with the possibility of future engagements on other matters, Mr. Movshin asked Broadvox whether it would waive the conflict. *Movshin Dec.*, ¶ 9.

8. Broadvox declined, as was its right, and on Feb. 3, 2010, Wilkinson in turn terminated its representation of Broadvox, as was its right. *Movshin Dec.*, ¶ 9. In a follow-up email on Feb. 4, 2010, Mr. Movshin outlined the basis for Wilkinson's disagreement with Broadvox's analysis under the ethical rules, stated that Wilkinson believed it was permitted to represent Qwest in this litigation, and confirmed that it intended to do so. *Motion*, Ex. A-2; *Movshin Dec.*, ¶ 10.

9. On Feb. 5, 2010, Roselli and Walker filed a notice that they had changed law firms to the Wilkinson firm, entering an appearance as Wilkinson attorneys. Dkt. No. 86.

10. On Feb. 16, 2010—twelve days after Mr. Movshin indicated that Wilkinson intended to take on the Qwest engagement, and eleven days after the change of law firm pleading that confirmed the same, Qwest filed its response to Broadvox's prior filed motion seeking attorneys' fees ("Broadvox Fees Motion"). Dkt. No. 88. That pleading bore the e-signature of Roselli, but Qwest's local counsel, Douglas Owens, also appeared on the signature block.

Counsel. *Keller Dec.*, ¶ 5. Mr. Gertsburg never responded to that final email from Mr. Keller and never indicated that there was any outstanding work to be done on the engagement. *Id.* The first time that Mr. Gertsburg indicated to Wilkinson that he had yet to review this work product was in his communications with another Wilkinson attorney, Larry Movshin, *after* this conflict issue arose. *See Movshin Dec.*, ¶ 10.

7. Mr. Movshin is Wilkinson's Ethics Partner. Mr. Movshin first contacted Broadvox regarding the potential conflict caused by bringing this case to Wilkinson on February 2, 2010. *Movshin Dec.*, ¶ 9. In the hope that the Firm could retain the relationship with Broadvox with the possibility of future engagements on other matters, Mr. Movshin asked Broadvox whether it would waive the conflict. *Movshin Dec.*, ¶ 9.

8. Broadvox declined, as was its right, and on Feb. 3, 2010, Wilkinson in turn terminated its representation of Broadvox, as was its right. *Movshin Dec.*, ¶ 9. In a follow-up email on Feb. 4, 2010, Mr. Movshin outlined the basis for Wilkinson's disagreement with Broadvox's analysis under the ethical rules, stated that Wilkinson believed it was permitted to represent Qwest in this litigation, and confirmed that it intended to do so. *Motion*, Ex. A-2; *Movshin Dec.*, ¶ 10.

9. On Feb. 5, 2010, Roselli and Walker filed a notice that they had changed law firms to the Wilkinson firm, entering an appearance as Wilkinson attorneys. Dkt. No. 86.

10. On Feb. 16, 2010—twelve days after Mr. Movshin indicated that Wilkinson intended to take on the Qwest engagement, and eleven days after the change of law firm pleading that confirmed the same, Qwest filed its response to Broadvox's prior filed motion seeking attorneys' fees ("Broadvox Fees Motion"). Dkt. No. 88. That pleading bore the e-signature of Roselli, but Qwest's local counsel, Douglas Owens, also appeared on the signature block.

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 3 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1      11. Finally, on Feb. 19, 2010, Broadvox filed its motion to disqualify. Dkt. No. 93.

## LEGAL STANDARDS

12. Motions to disqualify counsel are disfavored as they are considered "a drastic measure which courts should hesitate to impose except when absolutely necessary." *United States use of Lord Electric Co. v. Titan Pacific Constr. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986). They are therefore to be viewed with "extreme caution." *Id.; see also FMC Techs, Inc. v. Edwards,* 420 F. Supp. 2d. 1153, 1157 (W.D. Wash. 2006); *Research Corp. Techs. v. Hewlett-Packard*, 936 F. Supp. 697, 703 (D. Ariz. 1996) (no automatic rule of disqualification in Ninth Circuit, as disqualification is a harsh remedy that is disfavored).

13. Further, "[i]n deciding whether to disqualify an entire law firm because a lawyer associated with that firm is presumed to possess a former client's confidences, the Court engages in a balancing of the parties' competing interests. The right of the former client to preserve confidences it has disclosed to its attorney must be weighed against a party's right to employ counsel of its own choosing." *Lord Electric*, 637 F.Supp. at 1562. Further, "the Court must engage in a careful sifting and weighing of all relevant facts and circumstances." *Id.* at 1564.

14. The Ninth Circuit Court of Appeals has not adopted an automatic, or "per se" rule for disqualification, but rather, requires a district court to exercise its discretion and balance competing considerations in deciding such motions. *See, e.g., Amgen, Inc. v. Elanex Pharmaceuticals*, 160 F.R.D. 134, 140 (W.D. Wash. 1994) (concluding that "[w]hether to disqualify an attorney is within this Court's discretion"); *see also Research Corp.* 936 F. Supp. at 702-03 (disqualification in the Ninth Circuit a question of judicial discretion; no "per se" rule). Other courts similarly reject a formulaic application of the rules, noting competing considerations that require a court to use its discretion to balance those considerations. *See, e.g.,*

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 4 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

*EEOC v. Orson Gygi, Co., Inc.*, 749 F.2d 620, 621 (10th Cir. 1984) (disqualification motions are matters within the trial judge's discretion); *SWS Financial Fund A v. Salomon Bros. Inc.*, 790 F. Supp. 1392, 1399 (N.D. Ill. 1992) ("Salomon Brothers has assumed that disqualification automatically follows from a finding that a law firm has violated a conflict of interest rule. That assumption is not correct.").

15. Courts also recognize that disqualification motions are often employed as litigation tactics, to deprive a party of its counsel of choice. *Lord Electric*, 637 F.Supp. at 1562 ("technique of harassment"); *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) (raising "concern about 'tactical use of disqualification motions' to harass opposing counsel").

16. Further, disqualification is a disfavored, drastic remedy even *where* there has been an ethical violation. For instance, in *Research Corp.*, the court concluded "that the better rule is to consider the facts and circumstances of each case, including the particulars of the ethical violation itself, in determining whether the harsh sanction of disqualification is warranted." 936 F.Supp.at 703. This was so even though the court concluded that there *had* been a clear violation of Rule 1.7 regarding a *current client*. The court's further discussion is instructive here:

> As to the MW&E conflict, the nature of the ethical violation is not egregious. Although the violation should not have occurred, it was inadvertent. As soon as the respective MW&E attorneys realized that a problem existed, approximately two weeks after the concurrent representation occurred, they took precautions to safeguard against disclosure of any confidences. Moreover, disqualification would result in more prejudice to Research Corp. than any potential prejudice to Hewlett-Packard resulting from denial of disqualification.
> 
> . . . .
> 
> In addition, granting the motion would result in Research Corp.'s losing its chosen counsel and would delay the ultimate conclusion of these proceedings. In contrast, the prejudice to Hewlett-Packard is minimal. Perhaps most importantly, nothing indicates that any confidential information related to the pending action has been received by the Lupo-Lever litigation team as a result of Hewlett-Packard's brief March/April 1996 contacts with the MW&E tax attorneys. . . . Hewlett-Packard did not come forward with any showing that Research Corp. has

RESPONSE TO MOTION TO DISQUALIFY  
Case No. 2:08-cv-01715-RSM  
Page 5 of 15

Douglas N. Owens, P.S.  
P.O. Box 25416  
Seattle, WA 98165-2316  
(206) 748-0367, (206) 748-0369 (fax)

gained an advantage in the present patent litigation as a result of any past or present representation of Hewlett-Packard by MW&E.

*Id.*

17. In this case, the client is a "former client" (and there has not, in Wilkinson's view, been any ethical violation to begin with), although in all other respects the facts in *Research Corp.* read much like the facts of this situation. Most importantly, Broadvox points to no real harm or prejudice in its motion, which makes clear the *real* reason for its position: Broadvox simply did not want to "do anything that would make it more convenient for Qwest to litigate against Broadvox." *Motion, Exhibit A-2; Movshin Dec.*, ¶ 9. This is tactical opportunism at its worst. Further, Broadvox's position completely ignores the reality that Qwest already *had sued* Broadvox, long before attorneys Roselli and Walker moved their practice to Wilkinson, and Wilkinson had represented Qwest in other matters long before Broadvox engaged Wilkinson on the single matter Broadvox now urges as a basis for its Motion.

18. The one thing that appears not to be disputed is that Broadvox is now a former client of Wilkinson, and has been so since February 3, 2010.[3]

### THE WASHINGTON RULES OF PROFESSIONAL CONDUCT

19. As Broadvox acknowledges, the attorney-client relationship between Wilkinson and Broadvox had ended by the time Wilkinson filed the Qwest pleading on February 16, 2010 that precipitated Broadvox's Motion. This is therefore a situation involving a former client, and the Washington Rule of Professional Conduct ("RPC") that applies is RPC 1.9, "Duties to former clients." Tacitly acknowledging this, Broadvox spends much of its Motion arguing that Wilkinson has violated Rule 1.9(a) & (c) relating to former clients. Neither is the case.

---

[3] "The attorney-client relationship continued for both Wilkinson and Broadvox – until two weeks ago, on February 3, 2010." *Motion,* p. 4. Arguably the relationship ended long before February 3, 2010, when Wilkinson completed its work on the project on November 6, 2010. *Movshin Dec.,* ¶ 8.

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 6 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

20. Rule 1.9(a), RPC, provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in **the same or a substantially related matter** in which that person's are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." (emphasis added).

21. Neither Wilkinson, generally, nor Roselli and Walker, specifically, have violated Rule 1.9(a). The single project that Wilkinson completed for Broadvox before Roselli and Walker joined the firm is clearly not the same matter as this litigation, nor were the legal issues analyzed by Wilkinson related to this litigation. *See Keller Dec.*, ¶¶ 7, 9; *Morse Dec.*, ¶¶ 7, 9.

22. This lawsuit concerns Qwest's access charges for ordinary long-distance calls that Broadvox and the other defendants transported utilizing Internet Protocol ("IP") technology. The primary dispute is whether "IP-in-the-middle" carriers like defendants are liable to Qwest for terminating access charges. A related dispute is whether these defendants, including Broadvox, are common carriers, and specifically interexchange carriers, as opposed to Enhanced Service Providers ("ESPs"). *See, e.g.,* Broadvox Motion to Dismiss, Dkt. No. 48, at 8 (incorporating UniPoint's argument regarding primary jurisdiction relating to common carriers and interexchange carriers); UniPoint Motion to Dismiss, Dkt. No. 44, at 16.

23. The prior work done by Wilkinson for Broadvox did not deal with any of these issues. Wilkinson was not asked to provide any guidance relating to the applicability of access charges to the service that Broadvox provides, or to IP-transported long-distance traffic, generally. *Keller Dec.*, ¶ 7; *Morse Dec.*, ¶ 7. Wilkinson was not asked to provide any guidance on whether

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 7 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1 Broadvox is an ESP, a common carrier or an interexchange carrier.[4] *Id.* Broadvox never raised
2 any of these issues in any of its communications with attorneys Keller and Morse. *Id.*

3     24. Broadvox makes a strained, but telling assertion that the matters are substantially
4 related because both relate to "telecom regulatory matter[s]." *Motion*, p.11. A "substantial
5 relatedness" standard that broad would forever disqualify Wilkinson had it done previous work
6 for Broadvox on any telecom issue, no matter how unrelated to the issues in this litigation.
7 Indeed, if this was the test, then (since Qwest is a long-standing client of Wilkinson), it arguably
8 would have prevented Wilkinson from taking on the Broadvox representation in the first place,
9 knowing that VOIP providers and wireline carriers have, on occasion taken adverse positions
10 before the FCC. But that is clearly not the test, as Wilkinson did appropriately analyze the
11 existence of conflicts between its existing clients and Broadvox of which it was aware.
12 Wilkinson found none and did not perceive that Broadvox would view the provision of this type
13 of legal analysis as creating a conflict with other clients of the Firm, although it was well aware
14 of the broad representation of wireline carriers among those existing clients. *Movshin Dec.*, ¶ 4.

15     25. Indeed, when Broadvox engaged Wilkinson in July of 2009, this case was pending.
16 Wilkinson was not involved in this litigation at that time, but Broadvox obviously was.
17 Broadvox was embroiled in litigation with one of the largest wireline carriers in the country:
18 Qwest. Yet Mr. Gertsburg never inquired as to which wireline carriers were clients of
19 Wilkinson, or specifically, whether one of those wireline carriers was Qwest. He also never
20 suggested that the Wilkinson engagement was in any way, much less substantially, related to the
21 issues in the Qwest litigation. *Movshin Dec.*, ¶ 7. Broadvox's attempt to suggest *only now* that
22 the two matters are substantially related is nothing short of convenient revisionist history.

---

[4] Approaching the issue of substantial relatedness by describing the issues that Wilkinson did NOT work on is

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 8 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

26. The concern that Broadvox raises is really a screening concern: "In order to advise Broadvox on its compliance with the FCC's CALEA, 911 and LNP rules, Wilkinson obtained highly technical, sensitive and privileged information about Broadvox's network architecture, traffic patterns and operations." *Motion*, p. 11. The declarations of Philip Roselli (Exhibit D, hereinafter, *Roselli Dec.*), and Mark Walker (Exhibit E, hereinafter *Walker Dec.*), make clear that whatever documents Broadvox may have provided to Wilkinson in connection with the prior engagement, Messrs. Roselli and Walker have not seen them, and will never see them. *See also Movshin Dec.*, ¶ 12.

27. Broadvox nonetheless also asserts that there has been a violation of Rule 1.9(c), RPC. That rule provides that:

> A lawyer who has formerly represented a client in a matter or whose present of former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

28. Neither Wilkinson, generally, nor Roselli and Walker, specifically, have done either of these. Roselli and Walker have had no access to any information previously provided by Broadvox to Wilkinson. *Roselli Dec.*, ¶¶ 3-5; *Walker Dec.* ¶¶ 3-5. Neither ever will have access to this information based on the screening protocols put in place by Wilkinson. *Movshin Dec.*, ¶ 12. Nor will the Wilkinson attorneys who worked on the Broadvox matter have any involvement in the Qwest litigation against Broadvox. *Id.*

29. The only way that Broadvox can suggest potential impropriety, therefore, is through imputation of the Wilkinson Firm's knowledge of these matters to Roselli and Walker.

---

cumbersome, but is done to maintain Broadvox's privilege, and to maintain effective information firewalls (screens).

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 9 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1  Broadvox indeed cites Rule 1.10, RPC, to support its argument that such knowledge must be
2  imputed. What Broadvox fails to mention, however, is that Rule 1.10 operates to prevent such
3  imputation based on appropriate screening. Subsection (e) of that rule allows that Roselli and
4  Walker can continue to represent Qwest in this litigation as Wilkinson attorneys—even *if* they
5  otherwise could not under rule 1.9, if screening protocols are implemented and observed:

> When a lawyer becomes associated with a firm, no other lawyer in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless: (1) the personally disqualified lawyer is screened by effective means from participation in the matter and is apportioned no part of the fee therefrom; (2) the former client of the personally disqualified lawyer receives notice of the conflict and the screening mechanism used to prohibit dissemination of information relating to the former representation; (3) the firm is able to demonstrate by convincing evidence that no material information relating to the former representation was transmitted by the personally disqualified lawyer before implementation of the screening mechanism and notice to the former client.

30. Roselli and Walker have been screened from anything relating to the Broadvox matter. Keller and Morse have been screened from any involvement in the ongoing Qwest litigation against Broadvox. These measures are sufficient and expressly contemplated under the Washington ethical rules to protect Broadvox from any disadvantage. *See Lord Electric*, 637 F. Supp. at 1565 (the presumption of shared confidences may be rebutted by screening the personally disqualified attorney if he or she has changed firms).

31. Lawyers routinely join and leave firms. Firms merge and cease to exist. Lawyers freely move between private practice, government work and in-house positions. Washington's ethical rules recognize this fact. In particular, Comment 4 to Rule 1.9, RPC, entitled "Lawyers moving between firms," provides the following practical guidance as to the competing considerations in such situation:

> First, the client previously represented by the former firm must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the

RESPONSE TO MOTION TO DISQUALIFY  
Case No. 2:08-cv-01715-RSM  
Page 10 of 15

Douglas N. Owens, P.S.  
P.O. Box 25416  
Seattle, WA 98165-2316  
(206) 748-0367, (206) 748-0369 (fax)

rules should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their career. If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

32. Each of these factors weights in favor of denying Broadvox's Motion. Screening has protected Broadvox's interests and ensures that Wilkinson will fulfill its obligations. Granting Broadvox's motion would unreasonably deny Qwest its choice of counsel — particularly important in that this is not a new matter, but ongoing litigation. Finally, there is no good reason for disqualification here based solely on two attorneys' decision to relocate their practice.

33. Broadvox's "hot potato" cases do not apply here. First, Wilkinson did not "drop" Broadvox while in the middle of active work. There is no prejudice to Broadvox. The fact that, as of Feb. 3, 2010 Mr. Gertsburg had not reviewed the Wilkinson work product provided on Nov. 6, 2009 is the best evidence of this. This is also not a "hot potato" situation where a law firm dropped an existing client because it coveted a more lucrative client. Qwest was already a long time client of Wilkinson well before the arrival of Roselli and Walker. *Movshin Dec.*, ¶ 7.

34. Broadvox's "hot potato" cases are all distinguishable. In *Jelco* the Ninth Circuit affirmed the denial of the motion to disqualify.[5] In *Picker*, a law firm merging with the Jones Day firm pulled out of its representation of a long-standing client, Varian, one day before the merger of the law firms. It did so in order that the merged firm might then represent the plaintiff, Picker—which was viewed as a much more lucrative client—in litigation against Varian.[6] In

---

[5] *Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1352 (9th Cir. 1981).
[6] *Picker International, Inc. v. Varian Associates, Inc.*, 670 F. Supp. 1363, 1364 (N.D. Ohio 1987).

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 11 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1  *Estate Theatres* an attorney dropped a long-standing client in order to be able to sue that client.[7]

2  In *Harte Biltmore*,[8] after two law firms merged, they simultaneously represented and opposed

3  Harte in two different litigation matters. None of these factors are present here. Broadvox is *not*

4  a longstanding client of Wilkinson; Qwest is. There was no "motive" to pursue a more lucrative

5  client. Wilkinson did not consciously create a conflict or manipulate client relationships for

6  financial gain. This was happenstance occasioned by two lawyers changing firms.[9]

7      35. Even if the Court does not deny Broadvox's motion it should nonetheless reject

8  Broadvox's request to strike Qwest's Response to Broadvox's Fees Motion. Broadvox's

9  disqualification motion has nothing to do with the issues presented in Broadvox's Fees Motion,

10  and Broadvox offers no theory as to how the alleged conflict advantaged Qwest in responding to

11  Broadvox's Fees Motion. Nor does Broadvox offer any authority for such a draconian remedy.

12  Moreover, Douglas Owens would remain in any event as Qwest counsel on that pleading.

13      36. Moreover, Broadvox knew as of Feb. 4, 2010 that Wilkinson intended to represent

14  Qwest in this litigation. *Movshin Dec.*, ¶ 10. Roselli and Walker filed their Wilkinson entry of

15  appearance on Feb. 5, 2010. Broadvox could have filed its disqualification motion then. Instead

16  Broadvox waited—until *after* Qwest filed its Response to Broadvox's Fees Motion on Feb. 16,

17  2010. That was Broadvox's prerogative, but it is not reasonable for Broadvox to then request

18  that Qwest's Response to Broadvox's Fees Motion be stricken.

---

[7] *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.*, 345 F. Supp. 93, 100 (S.D.N.Y. 1972).
[8] *Harte Biltmore, Ltd. v. First Pennsylvania Bank, N.A.*, 655 F. Supp. 419, 421 (S.D. Fla. 1987).
[9] Courts have criticized the "hot potato" rule on these same bases. *See, e.g., Florida Ins. Guar. Ass'n, Inc. v. Carey Canada, Inc.*, 749 F. Supp. 255, 261 (S.D. Fla. 1990) (To require disqualification where conflict arose through mere happenstance, and law firm responded by immediately withdrawing from representation of adverse client "would unfairly prevent a client from retaining counsel of choice and would penalize an attorney who had done no wrong."); *see also Philbrick v. Chase*, Case No. CV980262264, 2003 Conn. Super. LEXIS 1661, at *12 (Super. Conn. June 3, 2003) (applying *Carey Canada* exception to "hot potato" rule, where it was "not a situation where a law firm consciously created a conflict or manipulated client relationships for financial gain.").

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 12 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

| | |
|---|---|
| 1 | Respectfully submitted this 8th day of March, 2010. |
| 2 | s/ Douglas N. Owens |
| 3 | Douglas N. Owens, WSBA No. 641 |
| 4 | PO Box 25416 |
| 5 | Seattle, WA 98165-2316 |
| 6 | (206) 748-0367 |
| 7 | dnowens@q.com |
| 8 | |
| 9 | Philip J. Roselli, Colo. Bar No. 20963 |
| 10 | Wilkinson Barker Knauer, LLP |
| 11 | 1515 Arapahoe Street, |
| 12 | Tower 1, Suite 1600 |
| 13 | Denver, CO 80202 |
| 14 | (303) 372-5661 |
| 15 | proselli@wbklaw.com |
| 16 | |
| 17 | Mark A. Walker, Colo. Bar No. 39044 |
| 18 | Wilkinson Barker Knauer, LLP |
| 19 | 1515 Arapahoe Street, |
| 20 | Tower 1, Suite 1600 |
| 21 | Denver, CO 80202 |
| 22 | (303) 372-5650 |
| 23 | mwalker@wbklaw.com |
| 24 | |
| 25 | *Attorneys for Plaintiff Qwest Corporation* |

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 13 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2010, I electronically filed the foregoing **RESPONSE TO BROADVOX'S MOTION TO DISQUALIFY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Alex E. Gertsberg<br>1228 Euclid Ave., #390<br>Cleveland, OH 44115<br>agertsburg@broadvox.com | Anita Taff-Rice<br>LAW OFFICES OF ANITA TAFF-RICE<br>1547 Palos Verdes #298<br>Walnut Creek, CA 94597<br>anitataffrice@earthlink.net |
| David H. Binney<br>K&L GATES LLP<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104<br>david.binney@klgates.com | Steven H. Thomas<br>MCGUIRE CRADDOCK & STROTHER<br>500 N. Akard, Suite 3550<br>Dallas, TX 75201<br>sthomas@mcslaw.com |
| Brian William Esler<br>MILLER NASH LLP<br>601 Union Street<br>4400 Two Union Square<br>Seattle, WA 98101<br>brain.esler@millernash.com | Brooks Elliot Harlow<br>MILLER NASH LLP<br>601 Union Street<br>4400 Two Union Square<br>Seattle, WA 98101<br>brooks.harlow@millernash.com |
| Charles David Breckinridge<br>HARRIS WILTSHIRE & GRANNIS<br>1200 18th Street, N.W.<br>12th Floor<br>Washington, DC 20036<br>cbreckinridge@harriswiltshire.com | Patrick Pearse O'Donnell<br>HARRIS WILTSHIRE & GRANNIS<br>1200 18th Street, N.W.<br>12th Floor<br>Washington, DC 20036<br>podonnell@harriswiltshire.com |
| Geoffrey P. Knudsen<br>SMITH & HENNESSEY<br>316 Occidental Ave. S., Suite 500<br>Seattle, WA 98104<br>gknudsen@smithhennessey.com | Andrew H. Salter<br>SALTER JOYCE ZIKER<br>1601 Fifth Avenue, Suite 2040<br>Seattle, Washington 98101<br>asalter@sjzlaw.com |

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 14 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1

Alex E. Gertsburg
BROADVOX
1225 Euclid Avenue, Suite 390
Cleveland, OH 44115
agertsburg@broadvox.com

Todd W. Wyatt
SALTER JOYCE ZIKER
1601 Fifth Avenue, Suite 2040
Seattle, Washington 98101
twyatt@sjzlaw.com

2

Dated: Mar. 8, 2010         s/ Douglas N. Owens

3

4

RESPONSE TO MOTION TO DISQUALIFY
Case No. 2:08-cv-01715-RSM
Page 15 of 15

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)