Qwest's Response To Broadvox's Motion To Disqualify

Case No. 2:08-cv-01715-RSM
Qwest Corporation
March 8, 2010

# EXHIBIT A

Declaration of Lawrence J. Movshin

1
2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

3

4    Case No. 2:08-cv-01715-RSM

5

6    QWEST CORPORATION,

7

8                    Plaintiff,

9    v.

10

11    ANOVIAN, INC.; et al,

12

13                    Defendants.

14

15

16

17    **DECLARATION OF LAWRENCE JAY MOVSHIN IN SUPPORT OF QWEST'S**
18    **OPPOSITION TO BROADVOX'S MOTION TO DISQUALIFY**

19

20

21        Lawrence Jay Movshin, under penalty of perjury, declares as follows.

22        1.      I, Lawrence Jay Movshin, am an attorney at the law firm of Wilkinson Barker

23    Knauer, LLP ("WBK" or "the Firm"), located at 2300 N Street, NW, Suite 700, Washington, DC

24    20037.    WBK holds itself out as one of the nation's leading communications law firms,

25    principally focused on assisting clients in all sectors of the communications field on a wide range

26    of matters.   We do not profess to be a general practice law firm, but rather practice principally

27    on clients in the communications industry.

DECLARATION OF LAWRENCE JAY MOVSHIN
Case No. 2:08-cv-01715-RSM
Page 1 of 8

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

2.    I have been a partner in WBK since April, 1993. Among other positions in which I have served in local Bar activities, I have served in the past as the Chairman of the Professional Practice Committee of the Federal Communications Bar Association. I currently serve as the Ethics Partner for the Firm, a position I have held for the last several years. In that role, I am actively involved in reviewing and negotiating retainer agreements with clients of the Firm, and in resolving potential ethical   conflicts that might arise during the course of the Firm's representation of our clients.

3.    Broadvox, Inc. ("Broadvox") was initially introduced to the Firm as a potential client in May, 2009. Based on the description of the scope of the work product Broadvox was seeking -- general advice as to how the company should comply with certain stated regulations of the Federal Communications Commission -- we determined that we could provide such advice without creating any conflicts with our existing clients. We also confirmed at the time that the Firm was not representing any of our existing clients in pending proceedings in which Broadvox, separately represented, had taken adverse positions on material matters.

4.    When we sent our standard retainer letter to Mr. Alex Gertsburg, Vice President – General Counsel of Broadvox, to initiate the representation, he voiced concerns with some of the verbiage in that letter. He was particularly concerned with our verbiage by which new clients are asked to provide a waiver of future conflicts with existing clients. We include such verbiage in our so-called "standard" retainer agreement in order to protect our ability to continue representing our existing clients, which the standard letter recognizes as including incumbent wireline carriers, their wireless affiliates, other wireless carriers, broadcasters, cable operators, satellite operators, wireless broadband operators, equipment manufacturers, tower companies and others in the communications industry, any of which is, or might be, involved adversely in some

DECLARATION OF LAWRENCE JAY MOVSHIN
Case No. 2:08-cv-01715-RSM
Page 2 of 8

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

1  regulatory proceedings in which Broadvox may also have an interest. In fact, because providers

2  of VOIP services like Broadvox have often taken positions in rulemaking proceedings before the

3  Federal Communications Commission which were adverse to the positions of industry sectors

4  that we regularly represent, we have required such a future waiver from all new clients in the

5  VOIP sector, of which there are several.

6       5.    I was aware that Mr. Gertsburg had discussed that standard verbiage with my

7  partner Robert Morse on a number of occasions, trying to work through a compromise that

8  would satisfy Broadvox' and the Firm's interests in this area. On or around June 17, 2009, Mr.

9  Morse and I had a lengthy telephone conversation with Mr. Gertsburg about our request for a

10 future waiver. I again reiterated our concern that new clients of the Firm should not be able to

11 unduly restrict our ability to represent our existing client base which included wireless, wireline

12 and satellite carrier clients, in matters unrelated to the matter for which we were being retained,

13 some of who might be adverse to providers of VOIP services, generally, in any given

14 proceeding, or even where a client might hire us to take positions adverse specifically to

15 Broadvox in a transaction or complaint proceeding. After some discussion of the matter, Mr.

16 Gertsburg agreed to retain us, and to provide a future conflict waiver with regard to regulatory

17 matters in which an existing client and Broadvox might be adverse. In return, the Firm agreed

18 that this future waiver would not apply to transactions or litigation matters, and Mr. Gertsburg

19 agreed that he would be reasonable and diligent in considering a waiver of any conflicts that

20 might arise in the future with regard to such transactional and litigation matters.

21      6.    With that agreement in place, Broadvox retained WBK on July 9, 2009. The

22 scope of the representation, as contemplated by the parties, is accurately described by Broadvox

DECLARATION OF LAWRENCE JAY MOVSHIN
Case No. 2:08-cv-01715-RSM
Page 3 of 8

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

1   as being to "advise Broadvox on its compliance with the FCC's CALEA, 911, and LNP rules."[1]

2   I was not involved in any of the substantive work on Broadvox's matters, substantially all of

3   which was handled by my partners Mr. Morse and Charles Keller.

4        7.    The Firm has recently added a group of lawyers previously practicing with the

5   Denver firm of Kamlet Reichert, LLP, including Philip Roselli and Mark Walker. In reviewing

6   potential conflicts between the matters and clients that they would be bringing to the Firm, we

7   recognized that one matter on which Messrs. Roselli and Walker were working involved

8   representation of Qwest Corporation against, among other defendants, Broadvox, Inc. (in

9   ongoing litigation in *Qwest Corp. v. Anovian, Inc. et al.* (the "Litigation"). Qwest Corporation,

10   its predecessor, US WEST, and their affiliates, have been clients of the Firm since well before I

11   joined the Firm in April, 1993, although our Firm had no involvement in, or to the best of my

12   knowledge, knowledge of, the Litigation.[2]  Indeed, although Mr. Gertsburg was well aware of

13   that our client base included wireline carriers when he retained the Firm, he never indicated that

14   any of the advice we were seeking would be related to any other litigation in which he was

15   involved against other entities in the communications industry.  Nor did he otherwise indicate

---

[1] *Motion to Disqualify* at 11 lines 1-2.

[2] Under the DC Code of Professional Responsibility, Rule 1.7, Comment 19 recognizes that:

> A lawyer retained for a limited purpose may not be aware of the full range of a client's other interests or positions on issues. Except in matters involving a specific party or parties, a lawyer is not required to inquire of a client concerning the full range of that client's interests in issues, unless it is clear to the lawyer that there is a potential for adversity between the interests of clients of the lawyer. Where lawyers are associated in a firm within the meaning of Rule 1.10(a), the rule stated in the preceding sentence must be applied to all lawyers and all clients in the firm. Unless a lawyer is aware that representing one client involves seeking a result to which another client is opposed, Rule 1.7 is not violated by a representation that eventuates in the lawyer's unwittingly taking a position for one client adverse to the interests of another client. The test to be applied here is one of reasonableness and may turn on whether the lawyer has an effective conflict checking system in place.

DECLARATION OF LAWRENCE JAY MOVSHIN
Case No. 2:08-cv-01715-RSM
Page 4 of 8

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

1   any concern that we might be representing any other entity in which he was then engaged

2   adversely in pending litigation.  I am therefore surprised by the suggestion in the Motion that the

3   matter for which we were retained and gave him advice is in any way related, much less

4   substantially related, to the Litigation.

5          8.      Recognizing the potential for conflict when Messrs. Roselli and Walker joined the

6   Firm, I determined based on conversations with my colleagues, that the work for which we had

7   been retained by Broadvox was complete, and had been so for several months.  In fact, the only

8   correspondence we had received from Broadvox since our last work product was delivered had

9   been a question about the amount of our bill for services rendered.   Although I determined that

10  we could have treated the representation as effectively terminated at that time, in order to retain

11  the possibility of future engagements on additional matters, we chose to seek a waiver of the

12  conflict that would be created by allowing our new colleagues to continue the representation of

13  Qwest in the Litigation that they had been engaged in from the outset, when they filed the

14  Complaint on behalf of Qwest on November 26, 2008.

15         9.      I attempted several calls to Mr. Gertsburg on Tuesday, February 2, 2010, but he

16  was out of the office; he returned our calls (from his vacation) mid-day on February 3, 2010.

17  During that conversation, I explained the situation to Mr. Gertsburg, reminded him of our

18  discussions leading up to the modification of our standard retainer letter, and asked him to waive

19  the conflict to allow the Firm, through Messrs. Roselli and Walker, to continue representing

20  Qwest in the Litigation.  Mr. Gertsburg chose not to grant the Firm the requested waiver, and he

21  told me that he did not want to do anything that would make it more convenient for Qwest to

22  litigate against Broadvox.  I advised him that since our work on the project for which we had

23  been retained had been completed, and we could terminate our services without any material

DECLARATION OF LAWRENCE JAY MOVSHIN
Case No. 2:08-cv-01715-RSM
Page 5 of 8

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

1    prejudice to Broadvox consistent with our responsibilities under Rule 1.16 of the DC Code of

2    Professional Responsibility, the Firm had chosen to so terminate.  I promptly followed up our

3    call with a confirming email (Motion, Exhibit A-2), resolving the billing issue he had raised in

4    December and again advising him that "since our work on the project is complete, we are

5    terminating our relationship with Broadvox at this time." Motion, Exhibit A-2.

6        10.    On February 4, 2010, Mr. Gertsburg responded, indicating that he did not think

7    our relationship was over, as he had not yet reviewed the delivered work product

8    (notwithstanding that almost three months had passed since it was delivered).  Because there

9    were matters of professional ethics involved, I promptly responded (Motion, Exhibit A-2) to

10    confirm and explain how the Firm had fully satisfied its ethical obligations to Broadvox, citing

11    Rules 1.16 under both the DC and Colorado Codes of Professional Responsibility (although in

12    our view only the DC rules applied to our engagement with Broadvox).  As I noted there, and do

13    not dispute now, until the Firm chose to exercise its right to terminate the relationship, Broadvox

14    had a right, as a current client, to deny its consent to our representation of Qwest, the Firm had

15    also had the right to terminate the relationship at any time that it could do so "without material

16    adverse effect on the interests of the client", and that was clearly the case when we chose to

17    terminate the relationship.  At that point, the Firm's responsibility to Broadvox was governed by

18    Rule 1.9.  Under that rule, the Firm cannot represent Qwest in the same or a substantially related

19    matter in which Broadvox' interests are materially adverse unless Broadvox gives informed

20    consent.

21        11.    The Litigation is not, in my view as I made the determination for the Firm, the

22    same or even a substantially related matter to the matters for which we were retained.  As I

23    confirmed with Mr. Morse and Mr. Keller before we decided to accept the representation of

DECLARATION OF LAWRENCE JAY MOVSHIN                Douglas N. Owens, P.S.
Case No. 2:08-cv-01715-RSM                                 PO Box 25416
Page 6 of 8                                             Seattle, WA 98165-2316
                                                     (206) 748-0367, (206) 748.0369 (fax)

1    Qwest in the Litigation (and as their declarations in the Litigation further confirm), none of the

2    issues involved in the Litigation is related in any meaningful way to the advice that we gave to

3    Broadvox in completing our work under the limited retainer agreement.    .    Under the

4    circumstances, it is my opinion that the matters are not the same or substantially related, and that

5    the Firm is not, therefore barred by the rules governing professional responsibility under DC,

6    Colorado or, as I have reviewed them, Washington State, from continuing to represent Qwest in

7    the Litigation.

8        12.    As further assurance that any information about Broadvox that we do possess will

9    not be available to any of my colleagues who are involved in the Litigation, we have moved all

10   paper files in our possession relating to the Broadvox matter to the offices of Mr. Morse, and we

11   have put limits in place on our file server that restrict access to the Broadvox files by Mr. Roselli,

12   Mr. Walker and limits access only to Mr. Keller, Mr. Morse, our partner Bryan Tramont, the

13   primary billing partner on the Broadvox account, and me.    All of the attorneys involved for

14   Broadvox have been advised not to discuss any of the information that they have received from

15   Broadvox with Messrs. Roselli and Walker or with any other attorney who may in the future be

16   asked to work on the Litigation for Qwest.    We would not use Mr. Keller, Mr. Morse or Mr.

17   Tramont to represent Qwest in this Litigation.

18       13.    In subsequent emails to me (Motion, Exhibit A-3), Mr. Gerstburg and Broadvox

19   have objected to my sharing his initial emails with Mr. Roselli, claiming that they contained

20   client confidences.    As a practical matter, it was necessary for me to discuss Mr. Gertsburg's

21   responses with Mr. Roselli in order to be sure that, as a former client, we would not be engaged

22   in a matter for Qwest that was the same as, or substantially related to, the matter for which we

23   had been engaged for Broadvox.    Moreover, the information was imparted to me by Mr.

DECLARATION OF LAWRENCE JAY MOVSHIN
Case No. 2:08-cv-01715-RSM
Page 7 of 8

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

1    Gertsburg after we had terminated the attorney-client relationship, and so he had no reason to

2    expect that it would be protected by the attorney-client privilege.  But most importantly, the

3    verbiage in Mr. Gertsburg's emails that he deemed confidential was information already known

4    to Qwest, and thus by extension, could be revealed to Qwest's attorney, Mr. Roselli, so there was

5    no breach of client confidence or attorney-client privilege in this regard.  And, at Mr. Gertsburg's

6    request, we did confirm that Mr. Roselli had not disclosed any information contained in Mr.

7    Gertsburg's emails to me to anyone outside the Firm.  (Motion, Exhibit A-4)  It must also be

8    noted that Mr. Gertsburg only identified the information as confidential days after he had sent it,

9    so even if it might have been, in his mind, confidential information, his designation as such after

10   the fact cannot create an ethical problem as to any disclosures that might have existed prior to

11   such designation.

12          Dated this 8th day of March, 2010.

13                                  s/ Lawrence Jay Movshin
14                                  Lawrence Jay Movshin

15

16

Qwest's Response To Broadvox's Motion To Disqualify

Case No. 2:08-cv-01715-RSM
Qwest Corporation
March 8, 2010

# EXHIBIT B

Declaration of L. Charles Keller

Honorable Ricardo Martinez

1
2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

3
4 Case No. 2:08-cv-01715-RSM

5
6 QWEST CORPORATION,

7
8                     Plaintiff,

9 v.

10
11 ANOVIAN, INC.; et al,

12
13                     Defendants.

14
15
16
17    **DECLARATION OF L. CHARLES KELLER IN SUPPORT OF QWEST'S**
18    **OPPOSITION TO BROADVOX'S MOTION TO DISQUALIFY**

19
20

21         L. Charles Keller, under penalty of perjury, declares as follows:

22         1.      I am an attorney at the law firm of Wilkinson Barker Knauer, LLP, located at

23 2300 N Street, NW, Suite 700, Washington, DC  20037 ("WBK").

24         2.      Broadvox, Inc. and its affiliated entities ("Broadvox") retained WBK on July 9,

25 2009.  Broadvox had not previously been a client of WBK.  The scope of the representation, as

26 contemplated by the parties, is accurately described by Broadvox as to "advise Broadvox on its

DECLARATION OF L. CHARLES KELLER
Case No. 2:08-cv-01715-RSM
Page 1 of 4                                              Douglas N. Owens, P.S.
                                                        PO Box 25416
                                                        Seattle, WA 98165-2316
                                                        (206) 748-0367, (206) 748.0369 (fax)

1    compliance with the FCC's CALEA, 911, and LNP rules."[1]  This is the only work we have done

2    for Broadvox.

3        3.    At no time during this engagement did Broadvox say anything to me, or provide

4    any information to me relating to Qwest, or its ongoing litigation with Qwest in this case, *Qwest*

5    *Corp. v. Anovian, Inc. et al.,* (the "Litigation").  At no time during the engagement did Broadvox

6    suggest that the work that it requested was related in any way to the Litigation.

7        4.    Qwest Corporation, its affiliates, and its US West predecessors in interest

8    ("Qwest") have been significant clients of WBK for over two decades.  At no time during the

9    representation, did Broadvox mention to me the Litigation or any other adverse interest with

10   regard to Qwest.

11       5.    The work that I performed for Broadvox consisted of the LNP elements of the

12   overall project.  I began work on my elements of the project in July 2009 and completed them in

13   September 25, 2009.  Specifically, my work on the LNP analysis was completed on November 6,

14   2009.  I considered the project complete at that time, and I have received no further inquiries

15   concerning either issue from Broadvox.  The language in my November 6, 2009 email regarding

16   performing similar analysis for other companies in the Broadvox corporate family does *not*

17   reflect that the project was not complete, but rather was intended as a business development

18   solicitation of other projects in the future.

19       6.    I understand that the primary legal issue in the Litigation is whether "IP-in-the-

20   middle carriers" can be liable for access charges imposed by local exchange carriers, and that

21   points of dispute in the Litigation include whether Broadvox and its affiliates are common

---

[1] *Motion to Disqualify* at 11 lines 1-2.

DECLARATION OF L. CHARLES KELLER
Case No. 2:08-cv-01715-RSM
Page 2 of 4

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

1   carriers, whether they are specifically interexchange carriers for purposes of the FCC's rules, and

2   whether these defendants, for purposes of this traffic, are Enhanced Service Providers ("ESPs"),

3   subject to the ESP exemption for access charges.

4         7.     Broadvox did not raise any of these issues in any of its communications with me.

5   Broadvox did not ask me to analyze or provide any guidance relating to the applicability of

6   access charges to the service that Broadvox provides, nor did I provide such analysis or

7   guidance.  Broadvox did not ask me to analyze or provide any guidance relating to the

8   applicability of access charges to Internet Protocol-transported long-distance traffic, nor did I

9   provide such analysis or guidance. Broadvox did not ask me to analyze or provide any guidance

10   on whether Broadvox is an ESP, subject to the ESP exemption related to access charges, nor did

11   I provide such analysis or guidance.  Broadvox did not ask me to analyze or provide any

12   guidance on whether Broadvox might be considered a common carrier or an interexchange

13   carrier, nor did I provide such analysis or guidance.

14         8.     I have had no discussions with Messrs. Roselli and Walker concerning ANY

15   confidential information and documents that Broadvox has provided to me.  Upon the

16   termination of WBK's relationship with Broadvox, hard copy files of any such information were

17   removed from WBK's general file room, and observed my colleague, Robert Morse, take

18   measures to have all such information in electronic form placed into folders into which Messrs.

19   Roselli and Walker, and all other attorneys formerly with the law firm of Kamlet Reichert, LLP,

20   are prohibited access.

21         9.     Based on the foregoing, it is my opinion that the legal analysis that I did for

22   Broadvox is not the same as or substantially related to the Litigation.

DECLARATION OF L. CHARLES KELLER              Douglas N. Owens, P.S.
Case No. 2:08-cv-01715-RSM                      PO Box 25416
Page 3 of 4                                    Seattle, WA 98165-2316
                                          (206) 748-0367, (206) 748.0369 (fax)

1        10.    To the best of my personal knowledge and belief, and based on my review of

2    information provided to me by Broadvox and other information in our possession, the foregoing

3    is true and accurate.

4        Dated this 8th day of March, 2010.

5                                         s/ L. Charles Keller

6                                         L. Charles Keller

DECLARATION OF L. CHARLES KELLER
Case No. 2:08-cv-01715-RSM
Page 4 of 4

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

Qwest's Response To Broadvox's Motion To Disqualify

Case No. 2:08-cv-01715-RSM
Qwest Corporation
March 8, 2010

# EXHIBIT C

Declaration of Robert G. Morse

Honorable Ricardo Martinez

1
2  **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE WESTERN DISTRICT OF WASHINGTON**
3
4  Case No. 2:08-cv-01715-RSM
5
6  QWEST CORPORATION,
7
8             Plaintiff,
9  v.
10
11  ANOVIAN, INC.; et al,
12
13             Defendants.
14
15  _____
16
17  **DECLARATION OF ROBERT G. MORSE IN SUPPORT OF QWEST'S OPPOSITION**
18  **TO BROADVOX'S MOTION TO DISQUALIFY**
19  _____
20

21      Robert G. Morse, under penalty of perjury, declares as follows.

22      1.      I, Robert Grant Morse, am an attorney at the law firm of Wilkinson Barker

23  Knauer, LLP, located at 2300 N Street, NW, Suite 700, Washington, DC   20037 ("WBK").

24      2.      Broadvox, Inc. and its affiliated entities ("Broadvox") retained WBK on July 9,

25  2009. Broadvox had not previously been a client of WBK.  The scope of the representation, as

26  contemplated by the parties, is accurately described by Broadvox as to "advise Broadvox on its

DECLARATION OF ROBERT G. MORSE
Case No. 2:08-cv-01715-RSM
Page 1 of 4

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1   compliance with the FCC's CALEA, 911, and LNP rules."[1]  This is the only work we have done

2   for Broadvox.

3       3.      At no time during this engagement did Broadvox say anything to me, or provide

4   any information to me relating to Qwest, or its ongoing litigation with Qwest in this case, *Qwest*

5   *Corp. v. Anovian, Inc. et al.,* (the "Litigation").  At no time during the engagement did Broadvox

6   suggest that the work that it requested was related in any way to the Litigation.

7       4.      Qwest Corporation, its affiliates, and its US West predecessors in interest

8   ("Qwest") have been significant clients of WBK for over two decades.  At no time during the

9   representation, did Broadvox mention to me the Litigation or any other adverse interest with

10  regard to Qwest.

11      5.      The work that I performed for Broadvox consisted of the CALEA and 911

12  elements of the overall project.  I began work on my elements of the project in July 2009 and

13  completed them September 25, 2009.  Specifically, my work on the 911 analysis was completed

14  on August 17, 2009 and my work on the CALEA analysis was completed on September 25,

15  2009.  I considered the project complete at that time, and I have received no further inquiries

16  concerning either issue from Broadvox.

17      6.      I understand that the primary legal issue in the Litigation is whether "IP-in-the-

18  middle carriers" can be liable for access charges imposed by local exchange carriers, and that

19  points of dispute in the Litigation include whether Broadvox and its affiliates are common

20  carriers, whether they are specifically interexchange carriers for purposes of the FCC's rules, and

---

[1] *Motion to Disqualify* at 11 lines 1-2.

DECLARATION OF ROBERT G. MORSE          Douglas N. Owens, P.S.
Case No. 2:08-cv-01715-RSM              P.O. Box 25416
Page 2 of 4                             Seattle, WA 98165-2316
                                        (206) 748-0367, (206) 748-0369 (fax)

1   whether these defendants, for purposes of this traffic, are Enhanced Service Providers ("ESPs"),

2   subject to the ESP exemption for access charges.

3       7.    Broadvox did not raise any of these issues in any of its communications with me.

4   Broadvox did not ask me to analyze or provide any guidance relating to the applicability of

5   access charges to the service that Broadvox provides, nor did I provide such analysis or

6   guidance.   Broadvox did not ask me to analyze or provide any guidance relating to the

7   applicability of access charges to Internet Protocol-transported long-distance traffic, nor did I

8   provide such analysis or guidance. Broadvox did not ask me to analyze or provide any guidance

9   on whether Broadvox is an ESP, subject to the ESP exemption related to access charges, nor did

10   I provide such analysis or guidance.  Broadvox did not ask me to analyze or provide any

11   guidance on whether Broadvox might be considered a common carrier or an interexchange

12   carrier, nor did I provide such analysis or guidance.

13       8.    I have had no discussions with Messrs. Roselli and Walker concerning any

14   confidential information and documents that Broadvox has provided to me.  Upon the

15   termination of WBK's relationship with Broadvox, I immediately removed hard copy files of any

16   such information from WBK's general file room, and have taken measures that have placed all

17   such information in electronic form into folders into which Messrs. Roselli and Walker, and all

18   other attorneys formerly with the law firm of Kamlet Reichert, LLP, are prohibited access.

19       9.    Based on the foregoing, it is my opinion that the legal analysis that I did for

20   Broadvox is not the same as or substantially related to the Litigation.

21      10.    To the best of my personal knowledge and belief, and based on my review of

22   information provided to me by Broadvox and other information in our possession, the foregoing

23   is true and accurate.

DECLARATION OF ROBERT G. MORSE
Case No. 2:08-cv-01715-RSM
Page 3 of 4

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

1       Dated this 8th day of March, 2010.

2                         s/ Robert G. Morse

3                         Robert G. Morse

DECLARATION OF ROBERT G. MORSE
Case No. 2:08-cv-01715-RSM
Page 4 of 4

Douglas N. Owens, P.S.
P.O. Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748-0369 (fax)

Qwest's Response To Broadvox's Motion To Disqualify

Case No. 2:08-cv-01715-RSM
Qwest Corporation
March 8, 2010

# EXHIBIT D

Declaration of Philip J. Roselli

Honorable Ricardo Martinez

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

Case No. 2:08-cv-01715-RSM

QWEST CORPORATION,

        Plaintiff,

v.

ANOVIAN, INC.; et al,

        Defendants.

---

**DECLARATION OF PHILIP J. ROSELLI IN SUPPORT OF QWEST'S OPPOSITION**
**TO BROADVOX'S MOTION TO DISQUALIFY**

---

Philip J. Roselli, under penalty of perjury, declares as follows.

    1.    I, Philip J. Roselli, am an attorney at the law firm of Wilkinson Barker Knauer, LLP, located at 1515 Arapahoe St., Suite 1600, Denver, CO 80202 ("Wilkinson"). I am one of the attorneys for Plaintiff Qwest Corporation in the above titled action, and have been since this action was filed on November 26, 2008. I am of age and competent to testify.

    2.    Along with Mark Walker, I have been lead counsel in this matter for Qwest from the outset of this litigation.

DECLARATION OF PHILIP J. ROSELLI
Case No. 2:08-cv-01715-RSM
Page 1 of 2

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

3.      I have no knowledge of the substance of the legal work performed by Wilkinson for the Broadvox defendants beyond the characterization of that work as stated in Broadvox's motion to disqualify.   Dkt. No. 93, at 3 ("Broadvox, Inc. had retained Wilkinson to assist Braodvox in complying with the regulations of the Federal Communications Commission (FCC) relating local number portability, 911 service and the Communications Assistance for Law Enforcement Act (CALEA)."). Furthermore, I have not received access to that work, the underlying research related to that work, or any documents provided by Broadvox to Wilkinson.

4.      It is also my understanding that Wilkinson has put in place safeguards that would make it impossible for me to access any such information or documents.

5.      In addition, I have not discussed nor will I discuss the substance of Broadvox's representation with Messrs. Keller or Morse or any other attorney at Wilkinson.

Dated this 8th day of March, 2010.

s/ Philip J. Roselli
Philip J. Roselli

DECLARATION OF PHILIP J. ROSELLI
Case No. 2:08-cv-01715-RSM
Page 2 of 2

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)

Qwest's Response To Broadvox's Motion To Disqualify

Case No. 2:08-cv-01715-RSM
Qwest Corporation
March 8, 2010

# EXHIBIT E

Declaration of Mark A. Walker

Honorable Ricardo Martinez

1
2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

3
4    Case No. 2:08-cv-01715-RSM
5
6    QWEST CORPORATION,
7
8                    Plaintiff,
9    v.
10
11    ANOVIAN, INC.; et al,
12
13                    Defendants.
14

---

15
16
17    **DECLARATION OF MARK A. WALKER IN SUPPORT OF QWEST'S OPPOSITION
        TO BROADVOX'S MOTION TO DISQUALIFY**
18

---

19
20

21        Mark A. Walker, under penalty of perjury, declares as follows.

22        1.        I, Mark A. Walker, am an attorney at the law firm of Wilkinson Barker Knauer,

23    LLP, located at 1515 Arapahoe St., Suite 1600, Denver, CO 80202 ("Wilkinson").  I am one of

24    the attorneys for Plaintiff Qwest Corporation in the above titled action, and have been since this

25    action was filed on November 26, 2008.  I am of age and competent to testify.

26        2.        Along with Philip Roselli, I have been lead counsel in this matter for Qwest from

27    the outset of this litigation.

DECLARATION OF MARK A. WALKER                         Douglas N. Owens, P.S.
Case No. 2:08-cv-01715-RSM                            PO Box 25416
Page 1 of 2                                           Seattle, WA 98165-2316
                                                      (206) 748-0367, (206) 748.0369 (fax)

3.    I have no knowledge of the substance of the legal work performed by Wilkinson for the Broadvox defendants beyond the characterization of that work as stated in Broadvox's motion to disqualify.   Dkt. No. 93, at 3 ("Broadvox, Inc. had retained Wilkinson to assist Braodvox in complying with the regulations of the Federal Communications Commission (FCC) relating local number portability, 911 service and the Communications Assistance for Law Enforcement Act (CALEA).").   Furthermore, I have not received access to that work, the underlying research related to that work, or any documents provided by Broadvox to Wilkinson.

4.    It is also my understanding that Wilkinson has put in place safeguards that would make it impossible for me to access any such information or documents.

5.    In addition, I have not discussed nor will I discuss the substance of Broadvox's representation with Messrs. Keller or Morse or any other attorney at Wilkinson.

Dated this 8th day of March, 2010.

s/ Mark A. Walker
Mark A. Walker

DECLARATION OF MARK A. WALKER
Case No. 2:08-cv-01715-RSM
Page 2 of 2

Douglas N. Owens, P.S.
PO Box 25416
Seattle, WA 98165-2316
(206) 748-0367, (206) 748.0369 (fax)