UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QWEST CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>ANOVIAN, INC., et al.,<br><br>    Defendants. | CASE NO. C08-1715RSM<br><br>ORDER ON MOTION FOR DISQUALIFICATION |

This matter is before the Court for consideration of a motion by the Broadvox defendants ("Broadvox") to disqualify plaintiff's counsel from further participation in this matter. Dkt. # 93. Broadvox asserts that disqualification is required because two of plaintiff's attorneys have associated with a law firm of which Broadvox is also a client, creating a conflict. Plaintiff Qwest Corporation ("Qwest") has opposed the motion, arguing that disqualification is not necessary under the applicable ethical rules, and that the motion was brought for a tactical advantage. After careful consideration of the parties' memoranda and the Washington Rules of Professional Conduct, the Court grants the motion.

## BACKGROUND

Plaintiff Qwest filed this action in late 2008, naming Broadvox as one of the defendants. At that time, plaintiff's attorneys Mark Walker and Philip Roselli were with the firm of Kamlet, Shepherd & Reichert LLP of Denver, Colorado. They associated with local counsel Douglas Owens of Seattle for

ORDER ON MOTION FOR
DISQUALIFICATION - 1

their *pro hac vice* status. Broadvox is represented in this litigation by Alex Gertsburg of Cleveland, Ohio, and Anita Taff-Rice of Walnut Creek, California, both of whom associated with local counsel David Binney of K&L Gates LLP. Broadvox, along with other defendants, filed a motion to dismiss for lack of personal jurisdiction. Dkt. # 48. While that motion was pending, in July 2009, Broadvox retained the firm of Wilkenson Barker Knauer, LLP ("WBK") to assist Broadvox "in complying with the regulations of the Federal Communications Commission (FCC) relating to local number portability, 911 service and the Communications Assistance for Law Enforcement Act (CALEA)." Declaration of Alex Gertsburg, Dkt. # 94, ¶ 4. WBK "holds itself out as one of the nation's leading communications law firms. . ." Declaration of Lawrence Jay Movshin, Dkt. # 102-2, ¶ 1.

Broadvox's motion to dismiss for lack of personal jurisdiction was granted by this Court on December 16, 2009. Dkt. # 68. Qwest has appealed that order. Also, Broadvox has been named as a defendant in the amended complaint filed by Qwest, with leave of Court, on January 14, 2010. Further consideration of the amended complaint has been stayed at the request of Qwest and remaining defendant Unipoint, pending resolution of Qwest's appeal. Dkt. # 98. This stay does not hinder the Court's consideration of pending matters regarding Broadvox, including this motion and a motion for attorney fees filed on February 3, 2010. Dkt. # 83.

Broadvox argues in this motion that Qwest's opposition brief on attorney's fees should be stricken, and attorneys Roselli and Walker be disqualified from further participation as counsel for Qwest, due to their recent association with the WBK firm. The record indicates that on February 3, 2010, Lawrence Movshin of the WBK firm, either after hiring Mr. Walker and Mr. Roselli into or in anticipation of hiring them, contacted Mr. Gertsburg to request that Broadvox waive any potential conflict, so they could continue representing Qwest in this litigation while associates at the WBK firm. Declaration of Lawrence Jay Movshin, Dkt. # 102-2, ¶ 9; Declaration of Alex Gertsburg, Dkt. # 94, ¶¶ 8-10 and Exhibits A-2 to A-4. Mr. Gertsburg, on behalf of Broadvox, declined to waive the conflict. *Id*. At that point, still on February 3, Mr. Movshin advised Mr. Gertsburg in writing that "[s]ince our work on the project is incomplete, we are terminating our relationship with Broadvox at this time."

ORDER ON MOTION FOR
DISQUALIFICATION - 2

Declaration of Alex Gertsburg, Exhibit A-2. There was further discussion between Mr. Gertsburg and Mr. Movshin regarding the relationship between Broadvox and WBK on February 4. *Id.* The following day, February 5, 2010, Mr. Roselli and Mr. Walker filed a "Notice of Change of Address/Law Firm" notifying the Court and all parties of their association with WBK. Dkt. # 86. They filed a Notice of Appeal on behalf of Qwest on February 19, 2010, along with the opposition to Broadvox's request for attorneys' fees mentioned above. Dkt. # 88. The same day, Broadvox filed this motion to disqualify counsel and motion to strike the opposition brief.

## ANALYSIS

This Court is primarily responsible for controlling the conduct of lawyers practicing before it. *See, e.g.*, *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir.1980). In deciding whether to disqualify counsel, the Court looks to the local rules regulating the conduct of the members of its bar. *United States ex rel. Lord Elec. Co. v. Titan Pac. Constr. Corp.*, 637 F.Supp. 1556, 1560 (W.D.Wash.1986) (citing *Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 439 (9th Cir.1983)). According to the Local Rules of this court, attorneys practicing in this district, including attorneys practicing *pro hac vice*, shall abide by the Rules of Professional Conduct promulgated by the Washington State Supreme Court:

> In order to maintain the effective administration of justice and the integrity of the Court, attorneys appearing in this District shall be familiar with and comply with the following materials ("Materials"):
>
> (1) The Local Rules of this District, including the Local Rules that address attorney conduct and discipline;
>
> (2) The Washington Rules of Professional Conduct, as promulgated, amended, and interpreted by the Washington State Supreme Court (the "RPC"), and the decisions of any court applicable thereto;
>
> (3) The Federal Rules of Civil and Criminal Procedure;
>
> (4) The General Orders of the court.
>
> In applying and construing these Materials, the court may also consider the published decisions and formal and informal ethics opinions of the Washington State Bar Association, the Model Rules of Professional Conduct of the American Bar Association and Ethics Opinions issued pursuant to those Model Rules, and the decisional law of the state and federal courts.

ORDER ON MOTION FOR
DISQUALIFICATION - 3

Local Rule (W.D.Wash.) GR 2(e). The Court has broad discretion to interpret and apply this local rule. *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir.1983) ( "District courts have broad discretion in interpreting and applying their local rules.")

The issue here involves the WBK law firm and the new association of Qwest's attorneys in this litigation with that firm. It is therefore governed by Washington RPC 1.10, "Imputation of Conflicts of Interest," which states in relevant part,

> (a) Except as provided in paragraph (c), while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
>
> . . . .
>
> (c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.
>
> . . . .
>
> (e) When a lawyer becomes associated with a firm, no other lawyer in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:
>
>   (1) the personally disqualified lawyer is screened by effective means from participation in the matter and is apportioned no part of the fee therefrom;
>
>   (2) the former client of the personally disqualified lawyer receives notice of the conflict and the screening mechanism used to prohibit dissemination of information relating to the former representation;
>
>   (3) the firm is able to demonstrate by convincing evidence that no material information relating to the former representation was transmitted by the personally disqualified lawyer before implementation of the screening mechanism and notice to the former client.
>
> Any presumption that information protected by Rules 1.6 and 1.9(c) has been or will be transmitted may be rebutted if the personally disqualified lawyer serves on his or her former law firm and former client an affidavit attesting that the personally disqualified lawyer will not participate in the matter and will not discuss the matter or the representation with any other lawyer or employee of his or her current law firm, and attesting that during the period of the lawyer's personal disqualification those lawyers or employees who do participate in the matter will be apprised that the personally disqualified lawyer is screened from participating in or discussing the matter. Such affidavit shall describe the procedures being used effectively to screen the personally disqualified lawyer. Upon request of the

ORDER ON MOTION FOR
DISQUALIFICATION - 4

former client, such affidavit shall be updated periodically to show actual compliance with the screening procedures. The law firm, the personally disqualified lawyer, or the former client may seek judicial review in a court of general jurisdiction of the screening mechanism used, or may seek court supervision to ensure that implementation of the screening procedures has occurred and that effective actual compliance has been achieved.

Washington RPC 1.10.

In order to apply this imputation rule, the Court must first determine whether Broadvox was, at the time Qwest's counsel joined WBK, a "current" client or a "former" one. If Broadvox was a current client, the analysis proceeds under RPC 1.7, and the screening provisions set forth above in RPC 1.10(e), which relate former clients and the provisions of RPC 1.9, need not be considered.

With respect to current clients, Washington Rule of Professional Conduct ("RPC") 1.7 provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) the representation is not prohibited by law;
> >
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; **and**
> >
> > (4) each affected client gives informed consent, confirmed in writing (following authorization from the other client to make any required disclosures).

RPC 1.7 (emphasis added).

Comment 3 to this rule states,

> A conflict of interest may exist before representation is undertaken, in which event the representation must be declined, unless the lawyer obtains the informed consent of each client under the conditions of paragraph (b). To determine whether a conflict of interest

ORDER ON MOTION FOR
DISQUALIFICATION - 5

> exists, a lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues involved. See also Comment to Rule 5.1. Ignorance caused by a failure to institute such procedures will not excuse a lawyer's violation of this Rule. As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.

Washington RPC 1.7, Comment 3.

Rule 1.3, to which this comment refers, is titled "diligence" and simply directs that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Washington RPC 1.3. Regarding the existence of an attorney-client relationship, the comment to this rule states,

> Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer, is looking after the client's affairs when the lawyer has ceased to do so.

Washington RPC 1.3, Comment 4.

Finally, Comment 6 to RPC 1.7 states,

> Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client.

Washington RPC 1.7, Comment 6.

Qwest argues that WBK's attorney-client relationship with Broadvox ended in November, 2009, when it completed its work on the discrete assignment for which the firm had been retained. Response to Motion to Disqualify, Dkt. # 102, ¶ 6. Qwest cites to a November 6, 2009 e-mail from Charles Keller, the WBK attorney who performed the work for Broadvox, as proof that the attorney-client relationship was ended. The e-mail from Mr. Keller to Mr. Gertsburg, with certain portions redacted for

ORDER ON MOTION FOR
DISQUALIFICATION - 6

privilege, states,

> We have completed our review of the information that has been provided thus far.  Although the information is not totally complete (for example, . . . redacted. . .
>
> [If] you'd like us to assess other companies within your corporate family, we would be happy to do so once the necessary information for those companies is provided.
>
> Please let us know if you have any questions.  I will be in the office today until 1:00 EST.  I will also be available next week by phone (though I will be out of the country).  Rob will be in the office today and next week.  ---Chuck---

Declaration of Alex Gertsburg, Dkt. # 92-2, Exhibit A-1.

Broadvox argues that this communication did not end the attorney-client relationship, and Broadvox was still a client of WBK until February, 2010.  Mr. Gertsburg states in his declaration that as of February, 2010 when the conflict issue arose, he had not completed review of WBK's work, and did not consider the attorney client relationship terminated.  *Id., ¶* 7.  When asked by Mr. Movshin on February 3rd for a waiver of the conflict, Mr. Gertsburg clearly stated his belief that the attorney-client relationship between Broadvox and WBK had not ended.  *Id*., Exhibit A-2.  He declined to waive the conflict.  *Id*.  Mr. Movshin's response the following day, February 4, acknowledged that Broadvox was at that time a current client, and then formally terminated the relationship:

> However, in an effort to maintain our relationship with Broadvox, and based on your representation in the retainer letter as to how you would consider such conflicts, we chose to ask for a waiver of the potential conflict that could be created when several attorneys from Kamlet Reichert, currently representing our long-time client Qwest in the Washington litigation adverse to Broadvox, joined Wilkenson Barker, if Qwest chose to retain them to continue that litigation.  And **as a current client**, represented separately in the matter, you clearly had a right to determine whether or not to waive that conflict (Rule 1.7(b) of both the DC Code of Professional conduct and the Colorado Rules of Professional Conduct.
>
> . . . .
>
> Of course, Alex, a client always retains the unfettered right to deny a request for a conflict waiver.  However, the basis you gave to Rob and me for doing so in this case—"not wanting to do anything that would make it more convenient for Qwest to litigate against Broadvox"—is not, in our view, consistent with your commitment to be reasonable in considering such waivers. . . .  As such, and as we had discussed at the time our retainer agreement was negotiated, in the absence of such a waiver, we have chosen to terminate our attorney-client relationship with [Broadvox].

*Id*. (emphasis added).

In the state of Washington, "[t]he essence of the attorney/client relationship is whether the

ORDER ON MOTION FOR
DISQUALIFICATION - 7

attorney's advice or assistance is sought and received on legal matters." *In re Disciplinary Proceeding Against Egger*, 152 Wash.2d 393, 410 (2004) ( *citing Bohn v. Cody*, 119 Wash.2d 357 (1992)). The relationship need not be formalized in a written contract; rather it may be implied from the parties' conduct. *Id*. "Whether a fee is paid is not dispositive, for the existence of the relationship turns largely on the client's subjective belief that it exists." *Id*.

The Court finds that this discussion confirms that Broadvox was a current client of WBK as of February 4, 2010, at least until WBK terminated the relationship in writing. Analysis of the conflict provisions therefore proceeds under Washington RPC 1.7, which establish conflict rules in matters involving current clients, rather than RPC 1.9, which governs an attorney's duties to former clients.

Under RPC 1.7, when Mr. Walker and Mr. Roselli changed law firms, their representation of client Qwest necessarily had to be declined by WBK unless the law firm obtained the informed consent of each client under the conditions of paragraph 1.7(b). RPC 1.7, Comment 3. Broadvox declined to consent, so at that point WBK and its new attorneys Mr. Walker and Mr. Roselli should have declined to continue representing Qwest in this litigation. *Id*. Moreover, even had Broadvox consented, such consent would not have been sufficient to waive the conflict and satisfy the requirements of RPC 1.7, because WBK's representation of Qwest in this litigation would "involve the assertion of a claim by one client against another client represented by the [same law firm] in the same litigation or other proceeding before a tribunal." Washington RPC 1.7(b)(3)**.** WBK's termination of the attorney-client relationship with Broadvox on February 4 did not resolve that conflict because RPC 1.7(b) served as a bar to WBK's representation of Qwest as a client in this litigation in the first instance. *Id.,* RPC 1.7 Comment 3, Comment 6.

In determining whether to exercise discretion to disqualify counsel, the Court has several obligations. First, it must balance the right of the client or former client to preserve confidences against a party's right to employ counsel of its own choosing. *Lord Elec*., 637 F.Supp. at 1562. Second, the Court must be mindful that "the interests of the clients are primary, and the interests of the lawyers are secondary." *Oxford Systems, Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055, 1066 (W.D.Wash. 1999); *citing*

ORDER ON MOTION FOR
DISQUALIFICATION - 8

*Haagen-Dazs Company, Inc. v. Perche No! Gelato, Inc.*, 639 F.Supp. 282, 286 (N.D.Cal.1986). Finally, the Court should resolve any doubts in favor of disqualification. *Chugach Elec. Assn. v. United States District Court*, 370 F.2d 441, 444 (9th Cir.1966), *cert. denied*, 389 U.S. 820 (1967); *Kurbitz v. Kurbitz*, 77 Wash.2d 943, 946 (Wash. 1970) (the attorney's right to practice law gives way in cases where there is question, in order to protect the public interest); *Harris By and Through Ramseyer v. Blodgett*, 853 F.Supp. 1239, 1273 (W.D.Wash.1994), *aff'd*, 64 F.3d 1432 (9th Cir.1995); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 189-190 (7th Cir.1979).

In applying these principles, the Court finds that disqualification, although a drastic remedy, is necessary to preserve the integrity of this litigation and protect the public interest in strict application of the Rules of Professional Conduct.  It is also necessary, according to Comment 6 of RPC 1.7, to protect the interests of both Broadvox and Qwest in the loyalty of their respective attorneys.  The Court further finds that the motion to disqualify was brought in a timely manner and not for an improper purpose. Accordingly, the motion for disqualification (Dkt. # 93) is GRANTED, and the attorneys with the firm of WBK shall not participate further in this litigation on behalf of Qwest.

As to the motion to strike plaintiff's opposition brief on attorney's fees, the Court finds that this is impractical and unnecessary.  The brief is signed by local counsel as well as Mr. Roselli, and does not appear to include any information gained through Mr. Roselli's recent association with WBK.  If the Court were to strike the brief, it could simply be re-filed with one signature.  Rather than require that, the Court will regard Mr. Roselli's signature as stricken.  The motion to strike is accordingly DENIED.

Dated this 7th day of April 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR
DISQUALIFICATION - 9